[Civ. No. 5157.   Fourth Dist.   Aug. 24, 1956.]

EDMON DENTON, Respondent, v. ALBERT WIESE, Appellant.

Clifford L. Duke, Jr., Buttermore & Lightner and Wesley E. Buttermore, Jr., for Appellant.

Ratelle & Forest for Respondent.

MUSSELL, J.—This is an action to recover the reasonable and agreed value of work, labor, services performed and materials furnished by plaintiff to defendant, at his special instance and request, in the rebuilding of a sand plant owned and operated by the defendant Albert Wiese.   Defendant Wiese in his answer alleged two affirmative defenses: (1) That he and the plaintiff entered into a contract whereby the plaintiff agreed to rebuild the sand plant for a sum certain and wrongfully refused to complete the rebuilding; and (2) That plain-

tiff acted as a contractor as defined in section 7026 of the Business and Professions Code; and that he did not have a license as required by said code. The trial court rendered judgment in favor of the plaintiff and defendant appeals.

Defendant Albert Wiese owned and operated a sand plant in Mission Valley in San Diego County. In July, 1953, he decided to rebuild the plant so that he could produce washed sand and asked plaintiff, who was in the welding business, to do the work. ██ Denton testified that Wiese said that he wanted to add a washer and change the plant around, moving the screen and putting an addition on the tunnel; that Wiese wanted a contract price on the job and he, Denton, told him he couldn't give him a contract price on it because he did not have a contractor's license and that the only way he could work it was on an hourly basis; that they called in some people and got prices on the steel and conveyor belting and parts that were needed on the job; that they figured up the materials together; that "The figures we had came to around $3,500 on the steel alone, steel and belting and material that was needed to do the job"; that it was agreed that he, Denton, was to receive $5.00 an hour for each man and a welding machine, and that Wiese was to pay for the material; that Wiese asked him for an approximate figure as to the total expenses he would incur and he, Denton, stated that he could not estimate how much work it would take to do the job; that "Mr. Wiese told me he had $4,500 to start the job and asked me if I would go along with him on the rest of it and I told him I would"; that he started to work for Wiese in July, 1953, and had two welding machines on the job; that he spent all of his time there except for some time spent at first on another job; that he kept a record of the time spent and the amounts paid for materials; that most of the time he had two men on the job besides himself; that Wiese exercised supervision over these men and told them how he wanted things done and also had other men working on the job; that he conferred with Wiese regarding everything he did on the job; that he ordered part of the materials used and the rest was ordered by Wiese; that he paid for all the material and sold it back to Wiese at cost because he could get a 10 per cent discount and it was agreed that he, Denton, should get this discount.

The plant was in operation in October, and Wiese had paid Denton $1,500 on August 10, 1953, $1,000 on September 10 and $1,000 on September 16, 1953. However, the work had

not been completed and on or about November 1st Denton presented a bill to Wiese, who then stated that he did not have the money to pay him. Denton quit and the work was finished by Wiese.

Mrs. Denton, who kept books for the plaintiff, testified that Wiese was charged $5.00 per hour for each of the welding machines and the operator and that part of Denton's time was charged at $3.00 per hour when he was not welding; that the balance due plaintiff from Wiese for labor and material was $4,481.71.

W. F. Le Page, a welder, testified that he worked for plaintiff in July, 1953, on the sand plant job; that Wiese frequently gave him instructions as to how he wanted the machinery installed and that he, Le Page, would make changes for him; that Wiese was on the job all the time, supervised his work and used him on jobs other than the rebuilding of the plant.

Charles Thomas, a salesman, testified that he quoted prices on materials to Wiese and sold them to Denton; that he was surprised at this as he had figured on selling the materials to Wiese at industrial user prices and that he had to sell to Denton on resale prices because Denton had a resale license; that Wiese told him he had to have the very best prices he could get.

Wiese, who was called as a witness for plaintiff under section 2055 of the Code of Civil Procedure, testified that his lease with the owners of the property occupied by his sand plant provided that he could remove his machinery, equipment and improvements on the property upon the termination of his lease; that he told Denton he wanted to put in a washer at the plant and asked him if he could give him a price on rebuilding the washer, moving the plant, changing the tunnel and installing a conveyor; that he asked Denton how much the whole job would run and Denton told him his job would run $3,500; that he told Denton he had $4,500 and asked if that would do the whole job and Denton replied that it would be more than ample; that he then told Denton to go ahead; that there was no memorandum of the contract; that Denton did not ask for more money after September 16, 1953, until some time in December, when he presented his bill; that the sand plant was attached to the ground and the supports which held up the structures were welded to steel plates set in a cement slab.

The trial court found, among other things, that the plain-

tiff was employed by the defendant to perform certain work for him in the rebuilding of the sand plant; that plaintiff was to receive an agreed hourly rate of pay; that he was to purchase the materials for the defendant and was to be allowed to take whatever discount he might receive from the suppliers; that plaintiff was also to furnish any other necessary equipment with operators for which the defendant was to pay the standard rental rate; that the plaintiff, at the request of the defendant, purchased and paid for the materials for the job and furnished other necessary equipment with operators which were used in the course of the rebuilding of the sand plant; that the agreed and reasonable value of the work done and materials and equipment furnished was $8,298.42; that $3,816.71 had been paid, leaving a balance due and owing plaintiff of $4,481.71; that the plaintiff did not enter into any contract with the defendant whereby he agreed to rebuild the said plant and supply all labor and materials for a sum certain, to wit $4,500, or any other sum certain; that plaintiff did not act as a contractor as defined in section 7026 of the California Business and Professions Code. The court then concluded that plaintiff was entitled to judgment in accordance with these findings.

Defendant first argues that the judgment should be reversed because plaintiff acted as a contractor within the meaning of section 7026 of the Business and Professions Code and by reason of section 7031 of said code was barred from bringing an action against Wiese.

Section 7026 of said code defines a contractor as ''any person, except an owner . . ., who in any capacity other than as the employee of another with wages as the sole compensation, undertakes to . . . or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith.''

Section 7031 provides: ''No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this State for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract.''

It is admitted that plaintiff did not have a contractor's

license. However, the provisions of sections 7026 and 7031 of said code do not apply to any person who engages in the activities therein regulated, as an employee with wages as his sole compensation. (Bus. & Prof. Code, § 7053.) In the instant case, while there is a conflict in the evidence relative to the terms of the employment of plaintiff by defendant, there is substantial evidence to support the trial court's finding that plaintiff was to receive an agreed hourly rate of pay for his services.

In *Frugoli* v. *Conway*, 95 Cal.App.2d 518, 520 [213 P.2d 76], it is said: ''The question whether one is an independent contractor or an employee is largely one of fact depending on all the circumstances of the relations of the parties. When those circumstances disclose a mixed relation of employment, the finding of the trial court based on substantial and competent evidence cannot be disturbed.''

In *Powell* v. *Berg*, 99 Cal.App.2d 353, 354, 355 [221 P.2d 743], the court said: ''Appellants' primary contention is that the judgment as to Powell must be reversed for insufficiency of the evidence to sustain the findings of fact. In particular, it is argued that the evidence establishes as a matter of law that Powell was 'a contractor' within the meaning of section 7026 of the Business and Professions Code, and since he admittedly was not licensed as such he could not recover. (Bus. & Prof. Code, § 7031.) Appellants argument in support of such contention is merely an attack upon the weight of the evidence. However, since the record discloses substantial evidence in support of the findings, their contention is utterly without merit. Suffice it to say that there is more than ample evidence that Powell did not represent himself to be a licensed contractor and that he rendered the services performed as an 'employee of another with wages as the sole compensation.' (§ 7026.) Additionally, there is more than ample evidence establishing defendants' control of the building operations and of the persons employed therein and the actual exercise of such control by defendants.''

In *Malvich* v. *Rockwell*, 91 Cal.App.2d 463, 468 [205 P.2d 389], various tests to be applied in determining the relationship of the parties are enumerated, including payment of wages, the right to hire and discharge the workman and to control the operations, the manner of the payment of compensation, the duration and conditions of employment, and the question of whether the employer may terminate the employment without cause at any time.

In *Dorsk* v. *Spivack*, 107 Cal.App.2d 206, 208 [236 P.2d 840], it was held that the question of whether respondent therein was actually functioning in the capacity of an unlicensed general contractor or merely as an employee hired by appellants to supervise the construction was clearly one of fact.

In the instant case, plaintiff did not hold himself out as a contractor and specifically stated he could work only on an hourly basis. There is evidence that Wiese supervised and controlled the job, that he used plaintiff's men on other work besides the rebuilding job, that he did his own subcontracting, and purchased part of the materials. We conclude that the evidence sufficiently supports the finding as to an agreed hourly wage.

■■■ Defendant further claims that there is no substantial evidence to support the court's finding that there was no contract between Denton and Wiese for a fixed sum on the sole ground that Denton was an employee and not an independent contractor. This contention is likewise without merit. There was no written contract between the parties and the testimony of plaintiff amply supports the finding of the trial court that Denton did not enter into a contract to rebuild defendant's plant for any fixed sum. While Wiese testified that Denton told him $4,500 would be more than ample for the whole job, he also testified that Denton told him that his job would run $3,500, and it appears that the parties figured that the steel and other material, alone, would cost approximately $3,500. The question of whether there was a contract for a fixed sum was one of fact for the determination of the trial court.

In view of what we have heretofore said, it is unnecessary to pass upon other points raised in respondent's brief.

The judgment is affirmed.

Barnard, P. J., and Burch, J. pro tem.,* concurred.

A petition for a rehearing was denied September 19, 1956. Griffin, Acting P. J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied October 17, 1956. Traynor, J., and Spence, J., were of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.