[Civ. No. 24900.   Second Dist., Div. Three.   July 28, 1961.]

HERBERT J. KUBOWITZ, Plaintiff and Appellant, v. ROBERT T. CANON et al., Defendants and Appellants.

Jerrold A. Fadem for Plaintiff and Appellant.

Samuel L. Kurland for Defendants and Appellants.

FORD, J. — The plaintiff Kubowitz brought an action against the defendants Canon, husband and wife, to recover an amount which he claimed to be due to him for labor performed and materials used upon certain residential property from September 1, 1952, until June 30, 1957. The trial court found that on or about July 1, 1955, the defendants Canon became indebted to the plaintiff in the sum of $7,046.67, and on June 30, 1957, became additionally indebted to the plaintiff in the sum of $66; it was further found that the amount of $2,350 was due from the plaintiff to Mr. Canon as rent for a portion of the premises. A judgment was accordingly entered in favor of the plaintiff in the sum of $4,762.67. Thereafter, the defendants' motion for a new trial was heard by a judge other than the trial judge because of the latter's absence from the county of Los Angeles. (See Code Civ. Proc., § 661.) Before ruling upon that motion, the judge read the reporter's transcript of the proceedings at the trial. The motion was granted, the order stating that it was granted on the grounds specified in the motion, "including the insufficiency of the evidence to justify the decision." The plaintiff has appealed from that order; the defendants have appealed from the original judgment.

The trial court found that the plaintiff was not a licensed contractor. The right of the plaintiff to recover for labor and materials furnished to the defendants was based upon the determination that his action was "not barred by section 7031 of the *Business and Professions Code,* nor was the plaintiff required to be a licensed contractor under the provisions of section 7028 of said Code."[1] With respect to the motion for a new trial, the points and authorities of all parties were primarily directed to the matter of whether that determination was correct. It was the position of the plaintiff, as it is on this appeal, that the only conclusion which could be reached under the evidence was that his acts were those of "an em-

---

[1] Section 7028 of the Business and Professions Code is as follows: "It is unlawful for any person to engage in the business or act in the capacity of a contractor within this State without having a license therefor, unless such person is particularly exempted from the provisions of this chapter."

Section 7031 of the Business and Professions Code (omitting the second paragraph thereof which was added in 1957) is as follows: "No person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action in any court of this State for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging and proving that he was a duly licensed contractor at all times during the performance of such act or contract."

ployee with wages as his sole compensation.''[2] Therefore, the plaintiff asserts, the judge who granted the motion for a new trial abused his discretion. The defendant, on the other hand, contends that the granting of a new trial was warranted because the nature of the evidence was such as to sustain, if not to compel, a finding that the plaintiff acted as a contractor who was required to be licensed.

■ In *Sweeley* v. *Leake*, 87 Cal.App.2d 636, this court said at page 640 [197 P.2d 401]: ''The principles of law applicable to an appeal from an order granting a motion for a new trial are well established. The presumption is in favor of the order granting a new trial and against the judgment. [Citations.] ■ When a new trial is granted on the ground of insufficiency of the evidence, an appellate court will not interfere with the order in the absence of a showing of a manifest or unmistakable abuse of discretion. ■■ The trial court, in hearing such motion, is not bound by the rule of conflicting evidence. It must weigh all the evidence and determine the just conclusions to be drawn therefrom, and its ruling will not be disturbed on appeal where there is a conflict in the evidence or where there is substantial evidence which would support a judgment in favor of the moving party. [Citation.] ■ The fact that the motion in the instant case was heard and determined by a judge other than the one who presided at the trial does not extend the power of this court in reviewing the matter. The judge hearing the motion stands in the shoes of the former judge and has the same power and is charged with the same duty as if the motion had come before the former judge. [Citations.]'' (See also *Kershner* v. *Morgali*, 152 Cal.App.2d 884, 885 [314 P.2d 105]; *Mendoza* v. *Enrico*, 121 Cal.App.2d 392, 395-396 [263 P.2d 70].)

The evidence which must be considered in the determination of this appeal will be summarized. In 1949, Mr. Canon acquired the real property known as 1628 North Beverly Glen Boulevard, Los Angeles. In that year the plaintiff did some plumbing work on the premises and was paid about $323 for it. Later in the same year he undertook further work for Mr. Canon, consisting of finishing the downstairs portion of the house. He did not tell Mr. Canon what it would cost. He testified that the charge for the materials and his work as a

---

[2]Section 7053 of the Business and Professions Code is as follows: ''This chapter does not apply to any person who engages in the activities herein regulated, as an employee with wages as his sole compensation.''

carpenter was $1,283.84. When payment was not forthcoming, it was agreed that the plaintiff would rent the lower portion of the structure for $50 per month, the amount of the rent to be applied against the amount owed by Mr. Canon. The plaintiff began living on the premises about the middle of the year 1950. In June or July, 1952, Mr. Canon asked the plaintiff to make further improvements. There was a dispute in the evidence as to the arrangement then made. The plaintiff testified as follows: "Q. Now, when did you and Mr. Canon next talk about some further work of improvement of his property? A. He came down to my place in June of 1952 and he said he was going to get married and that he had to change the house, remodel. Q. Did he describe for you what he wanted done by way of remodeling? A. Well, he wanted a bedroom added and he wanted a bathroom added. He wanted the kitchen fixed up and he wanted the rest of the house in general put in condition so he could live there. . . . Q. What did you say to him? A. I told him then that it would cost him from five to seven thousand dollars to do the job. Q. About how many square feet was he talking about adding to the house? A. About 750. Q. Was there anything else said in that first conversation in June, 1952? A. I told him that I didn't think the house was worth remodeling. I didn't think it was worth putting that much money into it, and we left it at that and nothing more was said. Q. When was the next talk you had with him? A. Oh, about the end of June or the first of July, 1952. Q. What happened? What was said at that conversation? A. He came back down again and he says, 'Go ahead with it.'" The plaintiff further testified that there was no written or oral agreement to do the work for a particular price.

Mr. Canon's testimony was that he told the plaintiff that he was going to be married and wanted the place to be made livable. He said that he asked the plaintiff "what he thought he could do it for," and the plaintiff said that he thought that it would cost about $1,500. When Mr. Canon commented that there was a little more than that due in rent, the plaintiff said it would cost a little more than that. Mr. Canon further testified that he gave no directions as to what was to be done except "for that digging out the ground in front to make it level"; he "just wanted the place made livable." He did not recall any statement by the plaintiff that he was going to charge $3.75 per hour for the work undertaken in 1952; the plaintiff told him "nothing" as to what his rate of pay would be. When the plaintiff told him that the work would

cost around $1,500 or $1,600, he never asked him to state what work was included therein and the plaintiff never told him. But he had some idea of what the plaintiff was going to do because they discussed it; he further testified: "After all, Kubowitz lived there for a number of years and had talked about it for—— the house over, many times."

The plaintiff testified that he drew up plans for the construction on two brown kraft sheets of paper which were about 18 by 24 inches in size. As to what was shown thereon, he said: "Well, the directions I took from what Canon originally told me he wanted done to the house." He did not think that he ever showed the plans to Mr. Canon. After Mr. Canon signed the applications for building permits, the plaintiff paid the fees and secured the permits from the building department. During the progress of the work, Mr. Canon had him make some changes: certain windows were arranged differently, an extra door was installed, extra shelving and drawers were put in the bedroom, and an open-beam ceiling was left in the bedroom. In one period of time he hired four men; he paid them and charged Mr. Canon with the amount so paid. For his own labor he charged Mr. Canon $3.75 an hour; he made no claim for money for himself other than as wages for his time. He was never licensed as a contractor.

The plaintiff testified that the plastering and stucco work was done by "a plasterer and stucco man." He further said that the "digging and help with the cement work was done by other men." He had another man help him with respect to the plumbing. The plaintiff paid the men who did the work. Except for a bath tub, a lavatory, a toilet and a kitchen sink, which Mr. Canon told him to obtain from Mr. Canon's uncle in Arcadia, and except for the sewer work, the plaintiff furnished all the materials that went into the job. He purchased sand, gravel, cement, steel, plumbing and roofing materials, as well as most of the electrical materials. He bought all the lumber. When the electrical work was needed, the plaintiff called an electrician; the electrician sent Mr. Canon two bills; Mr. Canon gave the bills to the plaintiff and the plaintiff paid them.

As to the participation of Mr. Canon in the work, the plaintiff testified as follows: "Q. . . . other than the man who removed the dirt in front of the premises and other than the man who hooked up the sewer, as far as you know, Mr. Canon had nothing further to do with the hiring of the men or the

securing of the materials or services for this job? . . . A. Outside of doing a little painting on the house, he didn't, no . . . . Q. He wasn't around too much, was he? A. Not during—— when the main progress of the work was going on, from September 1952, to the time he moved in in 1953, he would come in maybe once a week, maybe twice a week, but he was in and out. THE COURT: Did he give any orders to any of the men? A. He talked with them. Whether he give [sic] them orders or not, I don't know. THE COURT: Did they take all their orders from you? A. Yes. . . . Q. He didn't do any work around there to help you, did he? A. At the very start, him [sic] and a friend of his one Sunday, they knocked down a false chimney that was in the house and . . . helped throw it out . . . . Yes, that is all he did until after they moved in . . . then they done [sic] some painting and some other little work—wall papering and one thing and another." Except for minor matters, the job was finished by the end of October 1954. The plaintiff first rendered a statement to Mr. Canon for the work on November 16, 1955, showing the sum of $7,046.67 as being due as of that time. Up to that time Mr. Canon had made no monetary payments to the plaintiff for the work performed or materials used in making the particular improvements.

"The question whether one is an independent contractor or an employee is largely one of fact depending on all the circumstances of the relations of the parties." (*Frugoli* v. *Conway*, 95 Cal.App.2d 518, at p. 520 [213 P.2d 76]; see also *Denton* v. *Wiese*, 144 Cal.App.2d 175, 179 [300 P.2d 746].) As said in *Albaugh* v. *Moss Const. Co.*, 125 Cal. App.2d 126, at page 132 [269 P.2d 936]: "The difference between the natures of the relations of the employee and the contractor in their relations to the source of compensation is vast. An employer may give orders and direct an employee with reference to the acts to be done; also, he may terminate the employment at any time before the work is finished. But where a contractor has an agreement to deliver a finished job, a termination, without cause, of his efforts constitutes a breach of contract. An employee may quit at pleasure, but the contractor is bound to his task until it is finished."

The record in the present case discloses a factual situation that is unusual. From the summary of the evidence it clearly appears that divergent inferences could be drawn as to the capacity in which the plaintiff acted. Although the evidence was sufficient to support the determination of the trial judge that he was an employee of the defendant "with wages

as his sole compensation" (*cf. Dwight* v. *Leonard,* 174 Cal. App.2d 199 [344 P.2d 397] ; *Cargill* v. *Achziger,* 165 Cal.App. 2d 220 [331 P.2d 774] ; *Denton* v. *Wiese, supra,* 144 Cal.App. 2d 175; *Dorsk* v. *Spivack,* 107 Cal.App.2d 206 [236 P.2d 840] ; *Frugoli* v. *Conway, supra,* 95 Cal.App.2d 518; *Malvich* v. *Rockwell,* 91 Cal.App.2d 463 [205 P.2d 389]), it cannot be said that that was the only conclusion which the trier of fact could have reached under the evidence and the inferences which could reasonably be drawn therefrom. (See *Albaugh* v. *Moss Constr. Co., supra,* 125 Cal.App.2d 126, 132; *People* v. *Rogers,* 124 Cal.App.2d Supp. 909, 911 [271 P.2d 231].)

"Great latitude is given to the trial court and its action in granting the motion is conclusive upon an appellate court unless it clearly appears that it has abused its discretion." (*Anderson* v. *Dahl,* 121 Cal.App. 198, at pp. 200-201 [8 P.2d 883].) No abuse of discretion appears in the present case.

While the defendants have appealed from the judgment, it is settled that upon the affirmance of the order granting a new trial in a case such as the present one, the appeal from the judgment is moot. (*Freeman* v. *LaMorte,* 148 Cal.App.2d 670, 675 [307 P.2d 734] ; 3 Witkin, California Procedure, 2298-2299.)

The order granting a new trial is affirmed. The appeal of the defendants from the judgment is dismissed as moot. The defendants shall have their costs on both appeals.

Shinn, P. J., and Vallée, J., concurred.