[Civ. No. 21028.   First Dist., Div. One.   June 18, 1963.]

L. G. SPARKS et al., Plaintiffs and Respondents, v. L. D. FOLSOM COMPANY, Defendant and Appellant.

*Assigned by Chairman of Judicial Council.

J. T. Harrington for Defendant and Appellant.

Morgan, Beauzay & Holmes and Robert Morgan for Plaintiffs and Respondents.

SULLIVAN, J.—In this action by parents for the wrongful death of their son while working on a construction job, the sole question before us is whether the trial court's determination that the decedent was an independent contractor rather than an employee of the defendant is properly supported by the law and the evidence. We have concluded that it is and that the judgment in favor of the plaintiffs and against the defendant in the sum of $17,388.40 should be affirmed.

During August 1961 the defendant L. D. Folsom, Inc., was engaged in certain construction work for the Federal Aviation Agency on Anderson Mountain near Big Sur in Monterey County. Such work involved the leveling of the top of the mountain, the construction of a retaining wall and embankment on the fill, and the compacting of the new slopes. Large quantities of earth had to be moved by suitable heavy equipment. Since the defendant itself did not have sufficient equipment of this type for the job, it made arrangements to hire additional equipment fully maintained and operated.

The deceased, Frank Sparks, and his father, L. G. Sparks, plaintiff herein, were partners in a business called "Sparks Truck and Loader Service." In connection with this business they jointly owned a bulldozer. In addition, L. G. Sparks was the sole owner of a Michigan loader. At the commencement of the work on Anderson Mountain, defendant, lacking sufficient equipment, arranged with Sparks Senior to hire the Michigan loader fully maintained and operated by Sparks for $13.50 per hour. The defendant also arranged to hire the bulldozer, fully maintained and operated, at $10.50 per hour. It is not clear from the record exactly when the arrangements for the latter piece of equipment were made. Under both arrangements, the wages of the operator of the equipment were included in the stipulated rate. Pursuant to the first arrangement, Sparks Senior was continuously on the job from the start engaged in loading the dump trucks used in hauling quantities of earth to the top of the mountain.

Frank Sparks, the decedent, worked not only on the Sparks bulldozer but occasionally when the bulldozer was not in use, on a grader owned by the defendant. When he worked on the Folsom grader the defendant paid him an hourly wage according to the prevailing union scale in the area, applying straight time and overtime rates. Defendant's checks for these wages were made payable to the order of Frank Sparks and reflected standard payroll deductions including social security and income taxes withheld. In such instances, the

defendant paid premiums for workmen's compensation insurance covering young Sparks. However when the deceased operated the Sparks bulldozer, the defendant made payment by checks to the order of Sparks Loading and Trucking Company, the amounts of which were computed at the rate of $10.50 per hour according to the above arrangements and were not subject to any payroll deductions. The checks were in payment of "invoice tags" presented to the defendant. In such instances defendant paid no workmen's compensation insurance premiums.

On August 28, 1961, young Sparks came to the construction site at about noon. He had been away from the job for about three or four days but had left the Sparks bulldozer there. During this time it was not in use since the defendant was not authorized to operate it in his absence. Sparks intended to take the bulldozer off the Folsom job to another job in the general area. However Folsom's general superintendent asked Sparks if the latter's equipment could pull an earth compactor called a sheepsfoot and, having been told by Sparks that it could, arranged with the latter to hire the bulldozer at "the same price as before, ten fifty an hour." Upon the superintendent's direction, Sparks then took his bulldozer to a level or bench on the side of Anderson Mountain, approximately 24 feet wide and 900 feet long where he connected the sheepsfoot to it and proceeded with the earth compacting.

Sparks did this work for about three hours. The following events then occurred. The defendant had certain surplus railroad ties on the job which had been acquired for use in constructing embankments and retaining walls. One of the defendant's employees had received permission to remove these ties from the job. The ties were located on a lower level or road on the side of the mountain but such road was strewn with rocks which prevented a truck being driven in for the ties. Accordingly, defendant's general superintendent ordered young Sparks to disconnect the sheepsfoot and drive his bulldozer to the lower road for the purpose of clearing away the rocks in that area. Sparks did so and, having adjusted the blade on his equipment, was about to begin the road clearing operation when he was struck and killed by a rock which had been dumped from one of the trucks at the top of the mountain.

Arthur Kinnamon, the general superintendent on the job, after being called by plaintiffs pursuant to Code of Civil Procedure section 2055, testified on redirect examination by de-

fendant's counsel that Sparks *Senior* was at all times working under the supervision and control of Kinnamon and one Havens, a representative of the Federal Aviation Agency; that after he made the above arrangements with Frank Sparks on the day of the accident he told the latter what to do;[1] and that the defendant maintained the right to fire Frank Sparks at any time and the latter was free to quit at any time. The plaintiff L. G. Sparks testified that while he was on the job, Kinnamon, the superintendent told him what work he wanted done;[2] but that it was not specified how long he was to be there.

The trial court found that Frank Sparks was killed as a proximate and direct result of the defendant's negligence; that he "was following an independent calling, to wit: the furnishing of a bulldozer fully serviced, maintained and operated at a rate of $10.50 an hour; [and that] said decedent was not an employee of the defendant either general or special"; and rendered judgment accordingly for the plaintiffs.

Defendant makes no attack on the finding that it was guilty of negligence proximately causing the decedent's death. Defendant's sole contention here is that uncontradicted evidence in the record establishes as a matter of law that the relationship between the defendant and the deceased was that of special employer and employee and accordingly that the trial court's finding to the contrary is unsupported by the evidence.

■ "An independent contractor is one who renders service in the course of an independent employment or occupation, following his employer's desires only as to the results of the work, and not as to the means whereby it is to be accomplished." (*McDonald* v. *Shell Oil Co.* (1955) 44 Cal.2d 785, 788 [285 P.2d 902]; Lab. Code, § 3353; Rest.2d Agency, § 2.)

■ "In determining whether an individual is an employee or an independent contractor, the most important factor is the *right* to control the manner and means of accomplishing the result desired. . . . ■ And strong evidence of the employer's control is his right to discharge at will, without

[1]However the following is the extent of such testimony: "Q. Did you tell him what to do, Mr. Kinnamon? A. Yes, sir."

[2]L. G. Sparks testified: "Q. Now, when you were working on this job down there, Mr. Sparks, you were under the supervision and control of Mr. Kinnamon, were you not? A. Well, he's the one that was telling me what work he wanted done. Q. In other words, if there was a job to do, why, Mr. Kinnamon told you to go ahead and do it? A. That's right. Q. And while you were loading there with the Michigan loader there was only one way to load the trucks, I take it. Is that right? A. Just load the stuff on."

cause." (*California Emp. Com.* v. *Los Angeles etc. News Corp.* (1944) 24 Cal.2d 421, 425 [150 P.2d 186]; see also *Empire Star Mines Co.* v. *California Emp. Com.* (1946) 28 Cal.2d 33, 43 [168 P.2d 686]; *City of Los Angeles* v. *Vaughn* (1961) 55 Cal.2d 198, 201 [10 Cal.Rptr. 457, 358 P.2d 913].)

██ "Other factors to be taken into consideration are (a) whether or not the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the workman supplies the instrumentalities, tools and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee. (Rest., Agency, § 220; Cal. Ann. § 220.)'' (*Empire Star Mines Co.* v. *California Emp. Com., supra,* 28 Cal.2d at pp. 43-44. In accord: *Malloy* v. *Fong* (1951) 37 Cal.2d 356, 370-372 [232 P.2d 241].)

██ However, while the right to discharge at will is strong evidence of the right of control (see cases, *supra*), the contractual arrangement between the parties may be such that the right to discharge does not point to a relationship of employer and employee or necessarily preclude one of employer and independent contractor. Thus where there is an indivisible contractual arrangement for manpower *and* equipment, although the employer may terminate the hiring and rule both off the job, he cannot discharge the operator and retain the equipment or dispense with the equipment and retain the operator. Such an arrangement may present strong indicia of the relationship of employer and independent contractor and in such a situation the right to discharge, which is in reality the right to terminate the arrangement as a whole, may not necessarily import the authoritative control implicit in an employer-employee relationship. (*Western Indemnity Co.* v. *Pillsbury* (1916) 172 Cal. 807, 812-813 [159 P. 721]; *Luckie* v. *Diamond Coal Co.* (1919) 41 Cal.App. 468, 482 [183 P. 78]; *Counihan* v. *Lufstufka Bros. & Co.* (1931) 118 Cal.App. 602, 605 [5 P.2d 694]; cf. *Merrill* v. *Duffy Reed Construction Co.* (1960) 82 Idaho 410 [353 P.2d 657].)

██ "The question whether one is an independent contrac-

tor or an employee is largely one of fact depending on all the circumstances of the relations of the parties.'' (*Frugoli* v. *Conway* (1950) 95 Cal.App.2d 518, 520 [213 P.2d 76]. See *Kubowitz* v. *Canon* (1961) 194 Cal.App.2d 378, 384 [14 Cal. Rptr. 824].) █ In most cases it is a mixed question of law and fact, the determination of which by the trial court upon substantial evidence will be binding on the reviewing tribunal. (*Lee* v. *Nanny* (1940) 38 Cal.App.2d 90, 94 [100 P.2d 832].) █ However where the evidence is reasonably susceptible of only one inference, the question becomes one of law for the court. (*Robinson* v. *George* (1940) 16 Cal.2d 238, 242-243 [105 P.2d 914]; *Chapman* v. *Edwards* (1933) 133 Cal.App. 72, 79 [24 P.2d 211]; *Lee* v. *Nanny, supra.*)

We believe that reasonable minds may well differ as to the inferences to be drawn from the evidence in the case before us. As we shall point out in more detail, there is some evidence relative to three factors which, under the authorities discussed above (see *Empire Star Mines Co.* v. *California Emp. Com., supra,* 28 Cal.2d 33), tend to show an employer-employee relationship: (1) defendant's right of control and supervision over the work done by the deceased (*Empire Star Mines Co.* v. *California Emp. Com., supra; California Emp. Com.* v. *Los Angeles etc. News Corp., supra,* 24 Cal.2d 421); (2) as a subsidiary consideration to the foregoing, the defendant's right to discharge the decedent at any time and the decedent's reciprocal right to quit at any time; and (3) the payment of compensation for the work done by decedent at an hourly rate. (See 4 Schneider on Workmen's Compensation (3d ed.) 168; 26 Cal.Jur.2d, Independent Contractors, § 11, p. 407; *Brietigam* v. *Industrial Acc. Com.* (1951) 37 Cal.2d 849, 854 [236 P.2d 582].)

Defendant claims that the decedent was at all times subject to its right of control ''as to the duration of his employment and as to what he did and how he did it.'' It is argued that the decedent could have been discharged at any time. Contrary to these contentions, we find what little evidence there is, to be of an inconclusive character. We are mindful of the rules set forth above that the right of control essential to show one an employee must be as to the *manner* or *means* of doing the work (*Empire Star Mines Co.* v. *California Emp. Com., supra,* 28 Cal.2d 33) and must therefore extend to the *details* of the work. (Rest. 2d Agency, § 220.) █ In the first place, we find little evidence as to the actual control exercised by the defendant over Frank Sparks. In fact the only

direct evidence is found in the single question and answer (see fn. 1, *ante*) in which the witness Kinnamon affirms that he told young Sparks "what to do." Just *what* he told him does not appear. Nor does the record show *how* or *in what way* Kinnamon directed Sparks to pull the sheepsfoot on one level or clear the road of rocks on the other. We find no evidence of control over the manner or means of his doing the work. In this state of the evidence, we think that the trier of fact could very well infer that Kinnamon did not exercise control as to the *manner* or *means* of doing the work, that his instructions related merely to the *results* of the work, and that Kinnamon did not have the requisite right of control.

We note that the defendant introduced evidence directed to its right of control over Sparks *Senior*. In this, defendant's theory seems to have been that proof of its right of control over the father, who operated his own Michigan loader, would establish such right of control over the son as the operator of the Sparks bulldozer. Assuming the relevancy of such evidence, we still believe that the trial court could have found such evidence inadequate. The court could have well concluded that the evidence that Sparks Senior was at all times "under the supervision and control" of Kinnamon (see fn. 2, *ante*) did not establish the control set forth in the authorities to which we have referred but only "a broad general power of supervision and control as to the results of the work" (see *McDonald* v. *Shell Oil Co., supra,* 44 Cal.2d 785, 790) not inconsistent with a relationship of employer and independent contractor. Indeed, it could be inferred that Sparks Senior was admitting to a different concept of control than that urged by the defendant. When asked by defendant's counsel whether he was under the supervision and control of Kinnamon, Sparks responded: "Well, he's the one that was telling me *what work he wanted done*." (Emphasis added.) These words do not necessarily, if at all, reflect anything about the manner, means or details of the work. Defendant must be presumed to have had full information as to how it was conducting the job. Yet it offered no particular factual evidence on this important point.

Nor do we think defendant is aided by the evidence bearing on the right to discharge. As already pointed out, since the arrangements entered into by defendant involved both manpower and equipment, the right to discharge (actually the right to rule both the equipment and its operator

off the job) in the instant situation could be taken by the trier of fact as showing Sparks to be an independent contractor just as much as, if not more than, an employee. (See *Western Indemnity Co.* v. *Pillsbury, supra,* 172 Cal. 807 and other cases cited therewith.)

As opposed to the foregoing, there is also evidence in the instant record relative to three factors which, under the tests announced in the *Empire Star Mines Co.* case and other cases discussed above, tend to show an employer-independent contractor relationship: (1) The deceased and his father as partners in the "Sparks Truck and Loader Service" were engaged in a distinct business; (2) such partnership and not the defendant furnished the equipment for doing the work (see 4 Schneider, *op. cit.* 37);[3] (3) the parties themselves, by the manner in which they treated the arrangements between them, indicated that they believed they were creating an employer-independent contractor relationship. The partnership presented to the defendant invoice tags for the hiring of the bulldozer. Defendant paid these by checks made payable to the partnership and not the decedent, said checks being subject to no payroll deductions. On the other hand, when the deceased was operating the Folsom equipment, he received pay checks payable to him individually and subject to standard payroll deductions. Furthermore, the defendant paid no premiums on workmen's compensation covering the deceased when the latter operated the Sparks equipment but did pay such premiums when he operated the Folsom equipment. (See 4 Schneider, *op. cit.* 49; 1 Larson, The Law of Workmen's Compensation (1952 ed.) 685.)

We believe that the evidence in the record is sufficient to support the trial court's finding that "the decedent was following an independent calling." It was reasonable for the court to infer from all the evidence and from a consideration of the above factors that the deceased was an independent contractor. It may be that the court could have reasonably inferred that he was an employee. Even if we thought the latter inference the more reasonable one, we would be powerless to substitute it for that apparently drawn by the court below. (*Estate of Bristol* (1943) 23 Cal.2d 221, 223 [143 P.2d 689]; *Mah See* v. *North American Acc. Ins. Co.* (1923) 190 Cal. 421, 426 [213 P. 42, 26 A.L.R. 123].)

---

[3]However, as pointed out *supra* the method of payment being "by the time" rather than "by the job" (Rest. 2d Agency, § 220) constitutes a factor tending to show an employer-employee relationship.

Defendant's cases are not inconsistent with our conclusion. In *Baugh* v. *Rogers* (1944) 24 Cal.2d 200 [148 P.2d 633, 152 A.L.R. 1043], it appeared from the testimony of the plaintiff, a cleaning lady, and "without substantial conflict by inference or otherwise" (p. 206) that she was at all times subject to the right of control by her employer as to the duration of her employment, and as to what she did and how she did it. The court held that, viewing the evidence in any light, it admitted of no other reasonable conclusion except that she was an employee. Clearly that case and the instant one are factually distinguishable. In *Wessell* v. *Barrett* (1944) 62 Cal. App.2d 374 [144 P.2d 656], the plaintiff, a truck driver in the general employ of one company, was at the time of his injury a special employee of the defendant. The case was determined by the application of the familiar rules governing loaned employees. (See generally, 55 Cal.Jur.2d, Workmen's Compensation, § 35, p. 67.) The instant case does not involve the loaning of an employee. Here, the trial court found on substantial evidence that plaintiff was a partner in an independent business. *Sehrt* v. *Howard* (1960) 187 Cal.App. 2d 739 [10 Cal.Rptr. 128], also involving the general and special employment of a laborer, is distinguishable from the present case on the same basis.

The judgment is affirmed.

Bray, P. J., and Molinari, J., concurred.