[Civ. No. 21112. First Dist., Div. One. Oct. 24, 1963.]

ROBERT BORELLO et al., Plaintiffs and Respondents, v. EICHLER HOMES, INC., et al., Defendants and Appellants.

488

Eustice & Feeley and W. Gordon Eustice for Defendants and Appellants.

Gardiner, Riede & Elliott and William B. Wolfson for Plaintiffs and Respondents.

SULLIVAN, J.—In this action to foreclose a mechanics' lien, plaintiffs had judgment against Eichler Homes, Inc. (hereafter called Eichler), Freeman Paving Company (hereafter called Freeman), William Stecker, an individual doing business as W. H. Stecker Company, and United Pacific Insurance Company (hereafter called United). All of said defendants except Stecker appeal therefrom.

We set forth the following pertinent facts found by the trial court: Eichler was the owner of, and engaged in subdividing, certain real property located in Terra Linda Valley Units 3 and 4 in Marin County. Eichler contracted with Freeman for the performance by the latter of certain excavating and grading work on the property. Freeman in turn contracted with Stecker for the performance of such work by the latter. Plaintiffs had no dealings with Eichler, Freeman or United.[1] The court further found that Freeman and Stecker were agents of Eichler.

Plaintiffs were employed by Stecker from August 2, 1960, to October 6, 1960, on an hourly rental basis. Under the terms of their employment they furnished and operated cer-

---

[1] As will appear, United was joined as a defendant because it furnished pursuant to Code Civ. Proc., § 1193.2 a bond to release the lien filed by plaintiffs against the property in question.

tain excavating and grading equipment, which was used in performing the work to be completed by Stecker as required by his above-mentioned contract. Plaintiffs did not exercise any control, discretion or supervision in the performance of their work, but at all times remained Stecker's employees, acting solely in accordance with his directions. They were not licensed contractors.

The work done by plaintiffs was of the reasonable value of $12,168, all of which was due and owing from Stecker and none of which was paid.[2] Plaintiffs therefore filed and served on defendants a notice of intent to lien.[3] Thereafter and on January 11, 1961, plaintiffs filed their claim of lien setting forth a demand in the sum of $12,168 and describing the property sought to be charged as Unit 3 and Unit 4, Terra Linda, San Rafael.[4]

The trial court found that the claim of lien contained a description of the property sought to be charged with the lien sufficient for identification; "that such description was sufficient to enable a party familiar with the locality to identify the premises intended to be described with reasonable certainty, to the exclusion of all others"; that the only Units 3 and 4 situated in the community known as Terra Linda, including the subdivisions known as Terra Linda, Terra Linda Valley, Terra Linda Oaks and Terra Linda Gardens which were owned by Eichler between August 2, 1960, and October 6, 1960, were Terra Linda *Valley* Units 3 and 4, *the property on which plaintiffs performed their* aforementioned labor; that the description of the property given in the claim of lien "referred to an ambiguous description" since the phrase "Units 3 and 4" was not preceded by the name of the subdivision as was customary in title and property work and that the phrase "Terra Linda" as used in the claim of lien only referred to a community north of San Rafael which included the above-mentioned subdivisions; and that even if there were a mistake in the description of the property, it was not made with intent to defraud and no innocent third person had become, since the claim was filed,

---

[2] The record shows that Eichler paid Freeman for the work and Freeman in turn paid Stecker.

[3] Actually the record shows this was served on Stecker, Freeman and Eichler but not on United.

[4] The claim of lien refers to the property as "that certain real property situate in the County of Marin, State of California, known as Unit 3 and Unit 4, Terra Linda, San Rafael, California."

the owner of the property liened upon.[5]

On January 19, 1961, defendant United executed and recorded pursuant to Code of Civil Procedure section 1193.2 a bond releasing the property in question from the claim of lien.

The court concluded that Eichler was the owner of the property during the period of time in question; that plaintiffs' claim of lien complied in all respects with the requirements of Code of Civil Procedure section 1193.1 (see fn. 5, *ante*); that United was indebted to plaintiffs under its bond in the sum of $12,168 plus interest; that the work performed by plaintiffs was done at the instance of Stecker and Freeman, each of said defendants having acted under the authority, and being the agent, of the owner Eichler; that Stecker was indebted to plaintiffs in the sum of $12,168 plus interest; and that plaintiffs were entitled to judgment against all the defendants, jointly and severally, in the amount of $12,168 plus interest at the rate of 7 per cent per annum from October 6, 1960. Judgment was entered accordingly.

■ Defendants contend that the notice of intent to lien or prelien notice was defective because it did not contain an accurate and sufficient description of the property sought to be charged with the lien. At oral argument, defendants conceded that this objection was not raised in the court below. It therefore cannot be raised for the first time on appeal. (3 Cal.Jur.2d, pp. 634-636.) Nevertheless, we point out that Code of Civil Procedure section 1193, which prescribes the giving of a prelien notice, imposes no requirement that such notice contain a description of the property to be liened. In addition, the above statute expressly excepts from its operation and from the requirement of giving a prelien notice "one performing actual labor for wages." (Code Civ. Proc., § 1193, subd. (a); *Borchers Brothers* v. *Buckeye Incubator*

---

[5]The court also found: that the filing and service of the notice of intent to lien was in conformity with Code Civ. Proc., §§ 1193 and 1193.1; that the filing and recordation of the claim of lien was in conformity with Code Civ. Proc., § 1181 et seq.; that the claim of lien "conformed and complied in all respects to the requirements of" Code Civ. Proc. § 1193.1; and that even if there were a mistake in the description, the lien was not invalid. The foregoing are actually conclusions of law and are properly so considered although placed among the "findings of fact." (*Estate of Blake* (1910) 157 Cal. 448, 456 [108 P. 287,] overruled on other grounds in *Estate of Stanford* (1957) 49 Cal.2d 120, 129 [315 P.2d 681]; *Howard Townsite Owners, Inc.* v. *Progressive Oil Co.* (1961) 188 Cal.App.2d 24, 26 [9 Cal.Rptr. 856].)

*Co.* (1963) 59 Cal.2d 234 [28 Cal.Rptr. 697, 379 P.2d 1]; *Alta Building Material Co.* v. *Cameron* (1962) 202 Cal.App. 2d 299 [20 Cal.Rptr. 713].) As we shall explain hereafter, plaintiffs were employees of Stecker performing labor for wages and therefore did not come within the statute.

Defendants' principal attack, however, is directed at the claim of lien rather than at the prelien notice. As we have already noted, the claim of lien described the property to be charged with the lien as "Unit 3 and Unit 4, Terra Linda, San Rafael, California" whereas the correct description of the property was "Terra Linda *Valley* Unit 3 and Unit 4."[6] Defendants contend that the description contained in the claim of lien was fatally defective.

Section 1193.1, subdivision (j), of the Code of Civil Procedure provides that a claim of lien shall contain, *inter alia,* "a description of the property sought to be charged with the lien sufficient for identification."

█ As a general rule the description of property sought to be charged with the lien will be sufficient if it will enable a party familiar with the locality to identify the property with reasonable certainty to the exclusion of others. (*Willamette Steam Mills Co.* v. *Kremer* (1892) 94 Cal. 205, 209 [29 P. 633]; *Union Lumber Co.* v. *Simon* (1907) 150 Cal. 751, 758 [89 P. 1077, 1081]; *Hollenbeck-Bush Planing Mill Co.* v. *Roman Catholic Bishop* (1918) 179 Cal. 229, 231 [176 P. 166]; *Leibowitz* v. *Berry* (1931) 114 Cal.App. 5, 11 [299 P. 779]; see 52 A.L.R.2d 12, 22.)

█ Errors in the description may be disregarded if the identification of the property is otherwise sufficient, providing there is no fraud and no one is misled by the description. (*Union Lumber Co.* v. *Simon, supra,* 150 Cal. 751, 757-758.) In the last cited case the court said: "Whatever the statute has made essential to the creation of the lien must be fully and correctly stated [citations], but the description of the property to be charged with the lien is required to be only such as will be 'sufficient for identification.' The same fullness and precision of description is not required in the lien statement as in the case of a conveyance or a judgment. [Citation.] A false call or an inaccuracy in describing the

---

[6]The original complaint referred to certain lots as shown on "Map of Terra Linda No. 3" and "Map of Terra Linda No. 4." After securing leave of court, plaintiffs filed an amendment to the complaint in which the property was described as certain numbered lots in "Terra Linda Valley Unit 3" and "Terra Linda Valley Unit 4."

property will not defeat the lien if the description be not in itself misleading or defective in some essential particular." (P. 757.) Referring to Phillips on Mechanics' Liens, the court continued: "Mr. Phillips says (§ 379): 'If there appear enough in the description to enable a party familiar with the locality to identify the premises intended to be described with reasonable certainty, to the exclusion of others, it will be sufficient. There is great reluctance to set aside a mechanic's claim merely for loose description, as the acts generally contemplate that the claimants should prepare their own papers; and it is not necessary that the description should be either full or precise. *If the description identifies the property by reference to the facts, that is, if it points clearly to a piece of property and there is no other one that will answer the description, it is sufficient.*' Among the identifying facts which are held competent to be considered for determining its sufficiency are references to adjoining properties, a description of the building which has been constructed, *the fact that the land upon which it is erected is the only property of the owner in that locality.* [Citations.]" (150 Cal. at p. 758; italics added.)

Extrinsic evidence is admissible for the purpose of determining the sufficiency of a description which is vague or inaccurate and the description of the property may be found sufficient where the property is clearly identifiable from such extrinsic facts. (*Union Lumber Co.* v. *Simon, supra.*)

A California statute qualifies these broad rules and grants relief in situations where errors in the description of the property might otherwise be productive of harsh results. Section 1196.1 of the Code of Civil Procedure provides: "No mistake or errors in the statement of the demand, or of the amount of credits and offsets allowed, or of the balance asserted to be due to claimant, or *in the description of the property against which the claim is filed,* shall invalidate the lien, unless the court finds that such mistake or error in the statement of the demand, credits and offsets, or of the balance due, was made with the intent to defraud, or the court shall find that an innocent third party, without notice, direct or constructive, has since the claim was filed, become the bona fide owner of the property liened upon, and that the notice of claim was so deficient that it did not put the party upon further inquiry in any manner." (Italics added.)

In *Bothum* v. *Kreis* (1929) 101 Cal.App. 683 [282 P. 414], the court applied this statute to uphold the sufficiency of a

description which gave the wrong street number, omitted the number of the tract block, omitted part of the tract name and referred to book 22 of maps instead of book 22 of miscellaneous records. The court held that the defects were not such as to prevent a party familiar with the locality from identifying the property with reasonable certainty and observed that "[t]hat section [former Code Civ. Proc., § 1203, now § 1196.1] must mean that such a party shall ignore mistakes and errors and make a sincere attempt to ascertain what property is intended to be described." (P. 686.) In *Cain* v. *Whiston* (1943) 58 Cal.App.2d 738 [137 P.2d 479], the court applied former Code of Civil Procedure section 1203 (now § 1196.1) to uphold a description which correctly gave the name of an oil well but incorrectly gave a description of the property on which it was located. In *American Transit Mix Co.* v. *Weber* (1951) 106 Cal.App.2d 74 [234 P.2d 732], where the claim of lien described the property as lot 2 in block 2677 whereas the correct description was lot 2 in block 3677, the court held that under former section 1203 (now § 1196.1) the lien was not fatally defective unless it was found that an innocent third party without notice had become a bona fide owner of the property and the claim of lien was so deficient that it did not put such party on further inquiry.

■ Finally, it is to be noted that whether the description of the property sought to be charged with the lien is sufficient for identification is a question of fact to be determined by the jury or court from a consideration of the circumstances of the particular case. (*Union Lumber Co.* v. *Simon, supra,* 150 Cal. 751, 757; *Credit Bureau of San Diego* v. *Williams* (1957) 153 Cal.App.2d 834, 836 [315 P.2d 355].)

■ The dispute in the instant case is basically between the lien claimants (plaintiffs) and the owner of the property (Eichler). No rights of third parties are involved. The property described in the claim of lien is "Unit 3 and Unit 4, Terra Linda, San Rafael." However, it is also stated in the claim of lien that Eichler is the owner of the premises, that Eichler contracted with Freeman as original contractor for the construction of a subdivision, that Freeman contracted the grading and paving of the subdivision to Stecker, that Stecker employed plaintiffs to perform the grading of the subdivision, and that plaintiffs thereafter performed such grading work over the period August 2, 1960, to October 6, 1960. There was also evidence at the trial that there were four subdivisions in this area—Terra Linda, Terra Linda

Valley, Terra Linda Oaks and Terra Linda Gardens; that in title and property work it was customary in designating a subdivision to place the name of the subdivision before the numbers of the units or parts thereof, e.g., Terra Linda Units 3 and 4; that the entire area comprising all the subdivisions was considered as Terra Linda; and that a proper designation of the subdivision would be necessary so as to pinpoint any particular unit. The trial court could properly conclude from such testimony that the description contained in the claim of lien referred to units in a general geographical area embracing four subdivisions but that a designation of the particular subdivision of the four involved had not been made.

If, therefore, the trial court could properly conclude that the description was one of a geographical area of four subdivisions, were there other identifying facts from a consideration of which, together with the description, the trial court could find that the description pointed clearly to a particular subdivision, in this instance Terra Linda *Valley*? (See *Union Lumber Co.* v. *Simon, supra,* 150 Cal. 751.) The record shows that during the period of time involved in the lien, Eichler owned Terra Linda *Valley* Units 3 and 4 but did not own Terra Linda Units 3 and 4. Indeed we find no evidence in the record that at the crucial time Eichler owned any units 3 and 4 in any of the four subdivsions except Terra Linda Valley. Eichler of course knew of this ownership and was well aware that it had entered into the contract for the construction of this subdivision, which was referred to in plaintiffs' claim of lien. Indeed Eichler admitted at the trial that it knew plaintiffs were performing labor on the Terra Linda Valley units. Considered in reference to these identifying facts, the description points clearly to Terra Linda Valley Units 3 and 4. We fail to see how Eichler could have any difficulty in identifying the property sought to be liened or how it could have been misled in any way. We hold that the trial court's finding that the description of the property sought to be charged with lien was sufficient for identification is supported by substantial evidence.

Defendants, to support their claim that the property description is insufficient and the lien invalid, rely chiefly on the following cases: *Bishop* v. *Hayward Lumber & Investment Co.* (1937) 19 Cal.App.2d 234 [65 P.2d 125] (property described in section 3 when it was in reality section 30); *Hayward Lumber & Investment Co.* v. *Pride of Mojave Min-*

*ing Co.* (1941) 43 Cal.App.2d 146 [110 P.2d 439] (property described as section 22 when it was actually the northwest quarter (1/4) of section 33); and *Credit Bureau of San Diego* v. *Williams, supra,* 153 Cal.App.2d 834 (property described as " '2152 California St., San Diego, Calif., which premises claimant is informed and believes to be described as lot 5, block 227' " whereas there was in fact no such street address and no showing that the property involved was actually located on a lot 5 in block 227). The foregoing cases are distinguishable from the one before us. All of them involved entirely erroneous or unambiguously erroneous descriptions so that there was contained in the claim of lien not merely a defective or vague description but no description at all. No additional identifying facts were present which, when considered with the description, established that it pointed clearly to the property sought to be charged. In the instant case, on the contrary, the description was not unambiguously erroneous but, when considered with reference to other identifying facts, did point clearly to the particular property to be liened.

■ Defendants further contend that the court's finding that Freeman and Stecker were agents of Eichler is without support. To the extent that the finding connotes a general agency relationship existing between the above parties, such contention is correct. The record contains no evidence of agency. However the record does establish, as we have shown, that Eichler was the owner of the property sought to be charged with the lien and that Freeman and Stecker were the contractor and subcontractor having charge at least in part of the work involved. Under the mechanics' lien law they may properly be held to be the agents of the owner. (Code Civ. Proc., § 1182, subd. (c).[7]) In this limited sense, the finding under attack is supported by the record.

■ Nevertheless defendants' argument that the judgment against Freeman cannot be supported on any grounds has merit. Since plaintiffs and Freeman were not in privity and since Stecker was not the agent of Freeman, no basis existed for a personal judgment against Freeman. Indeed plaintiffs so conceded at oral argument. The judgment must therefore be reversed as to Freeman.

---

[7]Code Civ. Proc., § 1182, subd. (c) provides: "For the purposes of this chapter, every contractor, subcontractor, architect, builder, or other person having charge of the construction, alteration, addition to, or repair, in whole or in part, of any building or other work of improvement shall be held to be the agent of the owner."

 It is also urged that the judgment cannot be upheld as to Eichler.[8] The gist of this argument is that the judgment cannot be justified either apart from or under the mechanics' lien law. It is first claimed that since Stecker was not an agent of Eichler no personal judgment can be rendered against the latter. We agree. It is next claimed that no judgment can be predicated on the mechanics' lien law since the insufficiency of the description of the property invalidated any mechanics' lien. With this claim, we do not agree. As we have shown, the description was sufficient for identification and the lien was therefore effective. A judgment against Eichler as the owner of the property pursuant to and within the scope of the mechanics' lien law was therefore proper.[9]

 Finally defendants contend that plaintiffs were contractors, not employees, of Stecker and being unlicensed cannot recover. Since plaintiffs admitted at the trial that they were not licensed contractors, it is clear that they could not bring the present action if they were in fact acting as contractors in the performance of the work here involved. (Bus. & Prof. Code, § 7031; *Bierman* v. *Hagstrom Construction Co.* (1959) 176 Cal.App.2d 771 [1 Cal.Rptr. 826, 82 A.L.R.2d 1424].) The trial court however found that plaintiffs were employed by Stecker ''on an hourly rental basis'' and that at all times between August 2, 1960, and October 6, 1960, were ''employees of the defendant William H. Stecker.'' The question whether one is a contractor or an employee is ordinarily one of fact, the determination of which by the trial court on substantial evidence will be bind-

---

[8] No objection is raised to the judgment as to Stecker who is not an appellant herein.

[9] While the court rendered a *personal* judgment against Eichler, in our view, it properly took such action because of the release of Eichler's property from the lien following the furnishing of a bond pursuant to Code Civ. Proc., § 1193.2 on Eichler's behalf. Defendants do not raise any objection to a personal judgment on such grounds. As we have pointed out, defendants' sole objection to any judgment resting on the mechanics' lien law is that the lien was invalidated by an insufficient description of the property. It is clear of course that the above personal judgment cannot be founded on any existing privity of contract between plaintiffs and Eichler. (See *Pierce Engineering Co.* v. *Chohon* (1961) 196 Cal.App.2d 516, 518 [16 Cal.Rptr. 601].) Nor could it be based on Code Civ. Proc., § 1182, subd. (c) which cannot create a general agency relationship between Stecker and Eichler so as to impose a personal liability on the latter. (*Gibson* v. *Wheeler* (1895) 110 Cal. 243, 244-245 [42 P. 810].)

ing on the reviewing tribunal. (*Rodoni* v. *Harbor Engineers* (1961) 191 Cal.App.2d 560, 562 [12 Cal.Rptr. 924]; *Sparks* v. *L. D. Folsom Co.* (1963) 217 Cal.App.2d 279, 285-286 [31 Cal.Rptr. 640]; *Cargill* v. *Achziger* (1958) 165 Cal.App.2d 220, 222 [331 P.2d 774]; *Frugoli* v. *Conway* (1950) 95 Cal. App.2d 518, 520 [213 P.2d 76]; *Malvich* v. *Rockwell* (1949) 91 Cal.App.2d 463, 468 [205 P.2d 389].)

 The evidence in the record before us shows that Stecker employed plaintiffs as equipment operators and paid them by the hour. According to Stecker, the hourly rates covered the wages of the operator and the rental of the equipment. Arrangements were made with Stecker's foreman pursuant to which plaintiffs rented and operated a D-8 Caterpillar tractor and a D-7 Caterpillar tractor which pulled a 70 scraper. The hourly rates for the above three pieces of equipment were $18, $14 and $4.50, respectively. A record of the hours worked was maintained on a time sheet which Stecker's foreman signed each day. At the end of the month, plaintiffs billed Stecker.

Plaintiffs had no discretion as to how to perform their excavating work. They took their orders each day either from Stecker's foreman or his grade setter. DeMartini, the waste dirt moving foreman, testified that plaintiffs had no discretion as to the angles, slopes or depths of the cuts they were to make but that they were to follow his instructions.

We are satisfied that the foregoing evidence amply supports the trial court's finding that the plaintiffs were employees of Stecker. They were therefore not a contractor within the meaning of the contractors' licensing law (Bus. & Prof. Code, § 7026), were exempt therefrom as employees with wages as their sole compensation (Bus. & Prof. Code, § 7053) and were therefore not prevented from bringing the instant action by virtue of the fact that they were unlicensed (Bus. & Prof. Code, § 7031). (See: *Frugoli* v. *Conway, supra,* 95 Cal.App.2d 518; *Andrew* v. *Conner* (1951) 101 Cal.App.2d 621 [225 P.2d 943]; *Denton* v. *Wiese* (1956) 144 Cal.App.2d 175 [300 P.2d 76]; *Rodoni* v. *Harbor Engineers, supra,* 191 Cal.App.2d 560.) Defendants' argument that plaintiffs ''contracted to do a job of work for Stecker—furnish operators and equipment—not solely labor for wages'' is answered by our opinion in the *Rodoni* case. There the plaintiff-lien claimant's business was renting tractors and earth moving equipment and hiring out drivers for them, for all of which he was paid on an hourly rate. The plaintiff

however had nothing to do with the supervision of the work. We there held that such facts brought the *Rodoni* case within the holdings of *Frugoli, Andrew* and *Denton, supra; Malvich* v. *Rockwell, supra,* 91 Cal.App.2d 463; *Johnson* v. *Silver* (1958) 161 Cal.App.2d Supp. 853 [327 P.2d 245]; and *Cargill* v. *Achziger, supra,* 165 Cal.App.2d 220 and upheld the trial court's finding on substantial evidence that the lien claimant there involved was an employee.

Defendants argue that by giving the prelien notice under Code of Civil Procedure section 1193, subdivision (a) (which they were not required to do as persons performing actual labor for wages) plaintiffs admitted they were subcontractors and not laborers. We disagree. This was not conclusive but only one of many factors to be considered by the court. Opposed to this circumstance is the statement made by plaintiffs in the claim of lien (executed on the same day as the prelien notice, though filed later) that they had "furnished and supplied and performed *labor*" (italics added). It is further argued that plaintiffs described themselves in the claim of lien as subcontractors. The trial court could have properly concluded that the word "subcontractor" was "not used in a technical sense." (*Rodoni* v. *Harbor Engineers, supra,* 191 Cal.App.2d 560, 563; *Cargill* v. *Achziger, supra,* 165 Cal.App.2d 220, 223-224.) Finally, defendants urge that the claim made by plaintiffs is by a partnership which "cannot claim wages for its services." On the contrary both the claim of lien and the action to foreclose the lien is by plaintiffs "individually and doing business as Borello Bros., a partnership." We have found no cases, nor have any been cited to us, holding that lien claimants who have performed labor are precluded from filing and foreclosing their lien on such a basis.

The judgment is reversed as to defendant Freeman Paving Company and affirmed as to all other defendants.

Bray, P. J., and Molinari, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 18, 1963.