[Civ. No. 21434. First Dist., Div. One. July 27, 1964.]

PHILLIP F. ROGERS, Plaintiff and Appellant, v. SAM WHITSON, Defendant and Respondent.

Robert E. Hunter and Dorothy von Beroldingen for Plaintiff and Appellant.

Pelletreau, Gowen, Moses & Porlier and J. Vance Porlier for Defendant and Respondent.

SULLIVAN, J.—In this action on a book account and an account stated, plaintiff appeals from an adverse judgment rendered by the court sitting without a jury.

Plaintiff is a licensed excavating, grading and paving contractor. His brother, Ralph A. Rogers, is plaintiff's superintendent. Defendant Dr. Claude S. Whitson, sued herein as Sam Whitson, is the owner of the Jo Lin Arabian Horse Ranch properties (hereafter referred to as Jo Lin Ranch) approximately one-third of which was being subdivided during the latter part of 1958.[1] At all times herein material, Dr. Whitson's brother James Whitson was his business manager and personal agent and as such was in charge of the subdivision project. James Whitson was not a licensed contractor.

In August or September 1958, while plaintiff was doing certain highway construction work in Contra Costa County, he employed for a short period of time one Thomas Dolan, also named as a defendant herein,[2] as a "dozer" operator. Ralph Rogers testified that Dolan returned during the first part of October 1958 and told the witness "that he had a job and they needed dozers on that job, would I be interested in renting out dozers to him, to his company where he was working." Rogers replied in the affirmative and explained to Dolan the charges involved. Dolan returned a week later and said, "We will take them," but "We'll settle for the $22.00 an hour, and the $18.00 an hour, but we will handle the pay roll and the maintenance of the rig and we will pay you, we will deduct $6.00 an hour." According to Rogers, Dolan indicated that by "we" he meant the Jo Lin Ranch, stating that the equipment would be used there and that the ranch

---

[1] The complaint named Jo Lin Arabian Horse Ranch as a defendant. By his answer Dr. Whitson appeared "individually and doing business as Jo Lin Arabian Horse Ranch."

[2] Dolan apparently was never located, could not be served with process, and at no time appeared or testified.

would take care of the payroll.[3] The equipment, consisting of three bulldozers, was delivered to the ranch a short time later, the first dozer arriving on October 13, 1958.

Ralph Rogers maintained for plaintiff records of the actual time the equipment was in use at the ranch, which were introduced in evidence by plaintiff. Rogers obtained data for these records directly from a record book maintained by Dolan on the job. The witness testified that he made several visits to the job principally to determine if the equipment was in use and how long it would be needed. Although he never met Dr. Whitson there, he met and talked to James Whitson several times, Dolan on one occasion introducing him to James Whitson, saying: "This is Ralph Rogers and, Ralph, I want you to meet Jim, Jim Whitson, he's the wheel on the job, he's the big wheel on the job."

Ralph Rogers further testified that at the end of the job he asked Dolan about payment and the two men, at Dolan's suggestion, went to the ranch to see James Whitson about the matter. An argument thereupon ensued between Dolan and Whitson over certain charges. According to Rogers, he then gave Whitson a statement, prepared in plaintiff's office, showing a balance due of $4,156 and Whitson stated that "he'd see to it that we got paid. It should be a week or ten days." When at the end of this time no payment was forthcoming, the witness himself went over to Dr. Whitson's office and presented the latter with the bill, who told him that "he would see to it that we got paid."

Sometime later, Ralph testified, plaintiff and he, being pressed for money, both visited Dr. Whitson at the latter's office at which time they again presented him with a bill. After cursorily checking the bill, the doctor told both men they would get the money but suggested that they "go down to escrow and the title company, down there, and give them the information and make sure that we were on their list." Since the title company was then closed, they telephoned said company later in the week whereupon they learned that the title company had no escrow or other records concerning the Jo Lin Ranch. Plaintiff then referred the matter to his counsel. On cross-examination, Ralph Rogers testified that he personally did not have a copy of the bill submitted to Dr.

[3]All of this testimony dealing with Dolan's statements was admitted over defendant's objection that the alleged agent's (Dolan's) statements were not admissible to prove the fact of agency.

Whitson, that there "should be" a copy somewhere, and that Dolan was never billed for the work.

Plaintiff testified that he had no personal knowledge of the negotiations that took place between his brother and Dolan or James Whitson. However, he corroborated his brother's testimony about their visit to Dr. Whitson's office and what then and there transpired. Thereafter his brother Ralph attended to the collection of the bill. Plaintiff stated that he had searched his records but could find no copy of the bill.[4]

Defendant, called as an adverse witness under section 2055 of the Code of Civil Procedure testified he had no personal acquaintance with Dolan prior to the beginning of the subdivision work. He explained that the lots comprising the subdivision had been sold to a contractor on the basis of being furnished to him finished, complete, and ready for building. Dolan had been referred to defendant's brother by a third party as a man who would grade, excavate, and fill the lots. He (Dolan) had made an attractive offer, was willing to go along with the payment schedule, and would accept a boat which defendant wished to sell as part payment for his services.

Defendant testified that Dolan ran the job; that the latter was to do the work according to the engineering specifications; that Dolan took care of everything including the hiring of equipment and operators; that Dolan alone had the authority to hire and fire operators and workmen; that Dolan rather than defendant was responsible for and attended to the payroll; and that defendant and his brother, James Whitson, understanding that Dolan was a licensed contractor, looked to him directly to handle the job.[5] Defendant had no written contract with Dolan; had no knowledge whether or not a contractor's bond had been furnished; and had no knowledge as to whether a notice of nonresponsibility had been posted.

---

[4]Of interest is plaintiff's testimony that his wife customarily prepared the bills, that she usually sent out only one copy, and kept one copy for the office. It will be recalled that Ralph Rogers testified that he personally delivered one copy, presumably the original, to James Whitson on one occasion, one copy to Dr. Whitson on the occasion when he visited the doctor by himself, and a third copy on the occasion when both Ralph and plaintiff visited the doctor.

[5]Defendant further testified: "My brother couldn't tell him how to do anything, these things are all set up to specification and there was a full time engineer on the job and all my brother said was follow the engineer's instructions and we will go on a day by day basis. I didn't want myself extended financially."

At the conclusion of the above testimony under section 2055, plaintiff rested and defendant testified in his own behalf. He explained the purpose of the escrow at the title company and recounted how a dispute arose between Dolan and himself over Dolan's bills which defendant thought to be padded and excessive. Finally Dolan brought suit against defendant which was eventually settled, Dolan receiving a total payment of $11,250, part of the funds coming from the above escrow.

However defendant positively denied that he had ever received or even seen any bill from plaintiff or his brother Ralph or that he had ever seen any bills other than those by Dolan himself. According to defendant, the first time that he knew the Rogers brothers existed was in January 1959 when the pair called at his office. They told defendant that they were very much concerned over their account with Dolan and asked him if he had paid Dolan yet. Defendant answered in the negative, explaining his dispute with Dolan over the latter's padded and excessive bills. The Rogers then inquired as to the possibility of defendant protecting their bills. Defendant told them, as he had told other creditors of Dolan's, of the escrow setup to cover what defendant felt he owed Dolan stating "your lien time is still good, go present your lien as the other creditors have with the title company and to Mr. Knox, Mr. Dolan's attorney." Defendant further testified that he never agreed to pay Rogers' bill personally and that the Rogers never asked him to pay the money directly to them. As far as defendant was concerned his dealings were with Dolan. On cross-examination defendant also denied that his brother James had informed him about being contacted by Ralph Rogers and denied that James had ever given him any of plaintiff's bills which were claimed to have been delivered to James.

James Whitson testified that, acting on his brother's behalf, he hired Dolan believing him to be a licensed contractor. Dolan was hired on a daily basis and without a written agreement, his pay to be determined by his submitting a daily bill. The bills received from Dolan, which included other equipment as well as that of plaintiff, reflected an hourly rate, as agreed by the parties, for the various pieces of equipment in use. Pursuant to the agreement, Dolan maintained the equipment, paid the operators and paid the gas, oil and any other expenses. The witness corroborated his brother in stating that he exercised no supervision over

Dolan as far as telling him where or how to grade or excavate. This was done by the engineer. Although admitting that he had met Ralph Rogers on two occasions at the ranch, James Whitson positively denied ever having received a bill from either of the Rogers brothers, either personally or by mail. Although a subdivision bond had been filed, a contractor's bond had not. James Whitson was not a licensed contractor.

So far as is here pertinent, the court found that defendant had not become indebted to plaintiff in any amount on any legal theory asserted; that defendant had entered into an agreement with Dolan, who was an unlicensed independent contractor, believing in good faith that the latter was licensed; that Dolan had rented certain equipment from plaintiff, said rentals having been made to the former as an independent contractor and not as the agent, servant or employee of defendant; that defendant was not a licensed contractor; and that there was no contract, express or implied, between plaintiff and defendant. Judgment was rendered for defendant.

Plaintiff's diffuse specifications of error are reducible to two main contentions on appeal: (1) that defendant became personally liable to plaintiff; and (2) that an account stated was clearly established by the evidence. As will appear, plaintiff's position before us on these two crucial points, however disinclined he may be to acknowledge it, is more properly this: that the evidence is insufficient to support the trial court's finding that defendant was not liable to plaintiff on any legal theory asserted in the court below.

It is urged at the outset that defendant was an "owner-contractor"[6] and that this status at least in part constituted a basis of personal liability to plaintiff as a subcontractor. This argument which tries to draw sustenance from the fact that defendant was dealing with Dolan, an unlicensed person, seems strangely inconsistent with plaintiff's basic theory of case that defendant, through Dolan as an agent, was actually dealing with plaintiff. No section of the Business and

---

[6]Plaintiff cites Bus. & Prof. Code §§ 7026, 7028, 7030, 7031, 7044 and 7050. Although not clearly stated, plaintiff's argument seems to be that defendant acted as a contractor since he was a person "who . . . does himself . . . construct . . . any . . . development or improvement" (§ 7026) and did not fall within the statutory exceptions created by either §§ 7044 or 7050, particularly the latter since he was not "an owner who contracts for a project with a licensed contractor or contractors" (§ 7050), Dolan being unlicensed.

Professions Code relied on by plaintiff creates *ex proprio vigore* any personal liability on the part of an owner, falling within the definition of a contractor, to any person. Defendant cites no case supporting such proposition. We are not required to determine whether or not defendant was a contractor within the meaning of such statutes. Assuming that defendant came within the pertinent statute, the evidence, as we shall point out, amply supports the finding that he was not liable to plaintiff.

Indispensable to fastening a personal liability upon plaintiff is the establishment of a privity of contract between plaintiff and defendant. Such privity under the facts of the instant case depends upon whether Dolan was defendant's agent acting for him within the actual or ostensible scope of his authority. (Civ. Code, § 2330.) The trial court however found that the equipment was rented by plaintiff to Dolan as an independent contractor and not as defendant's "agent, servant or employee."

Generally speaking, whether a person is an independent contractor or an agent is determined by the same rules as those applicable in determining whether he is an independent contractor or an employee. (*People* v. *Frangadakis* (1960) 184 Cal.App.2d 540, 549 [7 Cal.Rptr. 776]; 1 Witkin, Summary of Cal. Law, p. 375; Rest. 2d Agency, §§ 2, 25, 142.) Our inquiry is directed to the same point regardless of whether Dolan is asserted to be an agent, servant or employee. "An independent contractor is one who renders service in the course of an independent employment or occupation, following his employer's desires only as to the results of the work, and not as to the means whereby it is to be accomplished." (*McDonald* v. *Shell Oil Co.* (1955) 44 Cal.2d 785, 788 [205 P.2d 802]; *Sparks* v. *L. D. Folsom Co.* (1963) 217 Cal.App.2d 279, 284 [31 Cal.Rptr. 640]; Lab. Code, § 3353; Rest. 2d Agency, § 2.) "In determining whether an individual is an employee or an independent contractor, the most important factor is the *right* to control the manner and means of accomplishing the result desired." (*California Emp. Com.* v. *Los Angeles etc. News Corp.* (1944) 24 Cal.2d 421, 425 [150 P.2d 186]; see also *Empire Star Mines Co.* v. *California Emp. Com.* (1946) 28 Cal.2d 33, 43 [168 P.2d 686]; *City of Los Angeles* v. *Vaughn* (1961) 55 Cal.2d 198, 201 [10 Cal.Rptr. 457, 358 P.2d 913]; *Sparks* v. *L. D. Folsom Co., supra,* 217 Cal.App.2d 279, 284-285.) The chief consideration which determines one to be an in-

dependent contractor is the fact that the employer has no right of control as to the mode of doing the work contracted for. Such relationship is not changed to that of an agent or employee because the work is to be done under the supervision of a person such as an architect or, as in this case, an engineer. (*Green* v. *Soule* (1904) 145 Cal. 96, 99-100 [78 P. 337].) ▮ The question whether one is an independent contractor on the one hand or an agent, servant or employee on the other, is ordinarily one of fact, the determination of which by the trial court on substantial evidence will be binding on the reviewing tribunal. (*Borello* v. *Eichler Homes, Inc.* (1963) 221 Cal.App.2d 487, 497-498 [34 Cal.Rptr. 648]; *Sparks* v. *L. D. Folsom Co., supra,* 217 Cal.App.2d 279, 285-286; *Rodoni* v. *Harbor Engineers* (1961) 191 Cal.App.2d 560, 562 [12 Cal.Rptr. 924]; *Cargill* v. *Achziger* (1958) 165 Cal.App.2d 220, 222 [331 P.2d 774]; *Frugoli* v. *Conway* (1950) 95 Cal.App.2d 518, 520 [213 P.2d 76]; *Malvich* v. *Rockwell* (1949) 91 Cal.App.2d 463, 468 [205 P.2d 389].)

▮ We are satisfied that the trial court's finding that Dolan was an independent contractor and not defendant's agent, servant or employee is supported by substantial evidence. The evidence in the record shows that Dolan ran the job; took care of everything including the hiring of equipment and operators; maintained the equipment and paid the operators, gas, oil and all other expenses; had the sole authority to hire and fire the operators and workmen; and was solely responsible for the payroll. ▮ While Dolan was required to do his work according to the specifications of the engineer, neither defendant nor his brother had the right to, nor did they, exercise any supervision over him by telling him where or how to do his work. Clearly this established that Dolan followed defendant's desires only as to the *results* of the work and not as to the *means* by which the work was accomplished. (*McDonald* v. *Shell Oil Co., supra,* 44 Cal.2d 785, 788.) ▮ The fact that defendant and Dolan agreed that the latter would do the work on a daily basis does not necessarily preclude the relationship of employer and independent contractor. (See *Sparks* v. *L. D. Folsom Co., supra,* 217 Cal.App.2d 279, 285.)

What we have just said disposes of plaintiff's additional claim that Dolan was the ostensible agent of defendant. The argument made on this point would be more properly addressed to the trier of fact. Plaintiff selects portions of the testimony allegedly supportive of his position. Far from

establishing ostensible agency as a matter of law, these excerpts at best raise a conflict in the evidence which was resolved against plaintiff by the court below.

Plaintiff also claims that Code of Civil Procedure sections 1182, 1183.1, 1185.1 and 1190.1 impose a personal liability on defendant.[7] This contention is utterly devoid of merit and requires but brief consideration. All of the above sections are contained in part 3, title 4, chapter 2 of said code which chapter deals with the enforcement of the liens of mechanics and others upon real property. The present action does not seek the enforcement of any lien. The rule is long and well established that in the absence of contractual privity the right to enforce a mechanics' lien against real property does not give rise to personal liability on the part of the owner. (*Roberts* v. *Security Trust & Sav. Bank* (1925) 196 Cal. 557, 573-574 [238 P. 673][8]; *Golden Gate Building Materials Co.* v. *Fireman* (1928) 205 Cal. 174, 177-178 [270 P. 214]; *Shelley* v. *Casa De Oro, Ltd.* (1933) 133 Cal.App. 720, 724 [24 P.2d 900]; *Pierce Engineering Co.* v. *Chohon* (1961) 196 Cal.App.2d 516, 518 [16 Cal.Rptr. 601]; 32 Cal.Jur.2d, Mechanics' Liens, § 166, p. 801.)[9] Assuming that defendant comes within the definition of contractor set forth in Business and Professions Code, section 7044, such fact alone does not make defendant, as plaintiff claims, ''personally liable as the prime contractor.'' The theory of plaintiff's argument seems to be that defendant occupied the position of contractor, Dolan that of subcontractor and plaintiff that of a subcontractor under Dolan or similar to a materialman. But in the absence of a contractual privity a person in such a position as plaintiff cannot recover from a contractor. (*Kruse* v. *Wilson* (1906) 3 Cal.App. 91, 93 [84 P. 442]; *Llewellyn*

[7]By emphasizing the concluding words of the Code Civ. Proc., § 1182, subd. (c), plaintiff attempts to draw therefrom support for his thesis of personal liability. Subdivision (c) provides: ''*For the purposes of this chapter,* every contractor, subcontractor, architect, builder, or other person having charge of the construction, alteration, addition to, or repair, in whole or in part, of any building or other work of improvement shall be held to be the agent of the owner.'' (Italics added.) Our emphasis is a complete answer to plaintiff's claim.

[8]Overruled on other grounds in *Peter Kiewit Sons' Co.* v. *Pasadena City Junior College Dist.* (1963) 59 Cal.2d 241, 245 [28 Cal.Rptr. 714, 379 P.2d 18].

[9]We are not presented with any issue as to defendant's personal liability on a contractor's bond since none was filed.

*Iron Works* v. *Reed* (1932) 123 Cal.App. 607, 612 [11 P.2d 657]; 9 Cal.Jur.2d, Building Contracts, § 24, p. 309.) No case cited by plaintiff supports his unique theory of personal liability. *Frey* v. *Superior Court* (1913) 22 Cal.App. 421 [134 P. 733] and *Weldon* v. *Superior Court* (1903) 138 Cal. 427 [71 P. 502] on which he relies deal with actions to enforce liens. ▮ Plaintiff's additional contentions that in order to avoid *personal* liability defendant was required to post and file for record a notice of nonresponsibility under Code of Civil Procedure, section 1183.1 and also file of record the original contract and bond under Code of Civil Procedure, section 1185.1 are untenable and unsupported by any authority, statutory or decisional. As we have already pointed out, the instant action is not one to enforce a lien.

Plaintiff next contends that "[a]n account stated has been clearly shown by the evidence." The trial court found to the contrary. As we have already stated, such a contention in this posture of the case is misconceived. It is incumbent upon plaintiff to show that the court's finding which he must face lacks support of substantial evidence. Instead of undertaking this duty, plaintiff directs our attention to certain testimony of Ralph Rogers concerning his presentation of the bill for $4,156 on one occasion to James Whitson and on another to defendant; to certain testimony of plaintiff concerning the visit of both brothers to defendant and the presentation of the bill again; and to certain testimony of James Whitson concerning a meeting with Dolan and Ralph Rogers. All of this evidence was contradicted. Plaintiff fails to mention other evidence introduced by defendant, summarized by us above, to the effect that neither plaintiff nor his brother James ever saw or received any bill from either of the Rogers.

▮ The following statement in *Davis* v. *Lucas* (1960) 180 Cal.App.2d 407, 409-410 [4 Cal.Rptr. 479] is pertinent here: "The appellate court starts with the presumption that the evidence sustains each finding of fact [citations], and the burden rests upon appellant 'to demonstrate that there is no substantial evidence to support the challenged findings.' [Citations.] ▮ To this end appellant must set forth in his brief all material evidence upon the point, not merely his own proofs [citations]; if this is not done the point is deemed waived (so held in the cases just cited). Counsel in this case has made no real effort to comply with the rule. ▮ '[A] claim of insufficiency of the evidence to justify findings, consisting of mere assertion without a fair statement of

the evidence, is entitled to no consideration, when it is apparent, as it is here, that a substantial amount of evidence was received on behalf of the respondents.' [Citation.]''

 In the instant case we need say no more than that the evidence on the point is in substantial conflict which was resolved against plaintiff by the trial court. Considering the pertinent evidence in the light favorable to defendant, it is clear that the latter received no bill from plaintiff and that consequently the evidence supports the trial court's finding that there was no account stated between the parties. (*Fogarty* v. *McGuire* (1959) 170 Cal.App.2d 405, 409 [338 P.2d 992].)

Finally we dispose of a miscellany of minor contentions:

 First: Plaintiff claims that the court erred in admitting in evidence over objection certain testimony[10] of James Whitson relating to the nature of the agreement between defendant and Dolan on the ground that the agreement was illegal and therefore inadmissible. The point of the objection was that defendant was an unlicensed owner-contractor. The court committed no error. Such evidence was introduced to show Dolan was an independent contractor rather than an agent, and was relevant on such issue. The instant action is not one *brought* or *maintained* by an unlicensed contractor to collect compensation under an illegal contract. (Bus. & Prof. Code, § 7031; see *Culbertson* v. *Cizek* (1964) 225 Cal.App.2d 451, 473 [37 Cal.Rptr. 548] and cases therein cited.)[11]

 Second: Plaintiff claims that the court erred in admitting in evidence, over objection, the bills submitted by Dolan to defendant on the ground that they were hearsay. The claim is without merit. The bills were offered as evidence of the relationship of owner and independent contractor between defendant and Dolan and not as proof of the truth of the matters stated therein. They were therefore not within the hearsay rule. (6 Wigmore on Evidence (3d ed.) § 1766, pp. 177-178; Witkin, Cal. Evidence, § 205, p. 232; McCormick on Evidence, § 225, p. 460.)

Third: Plaintiff claims that the evidence of Dolan's bills, although improperly admitted, sustains appellant's conten-

[10]Before the objection was made, a substantial amount of testimony was received without any objection from plaintiff.

[11]Nor would Bus. & Prof. Code, § 7031, prevent defendant from presenting an offsetting claim defensively and to this end introducing evidence of any underlying agreement. (*Culbertson* v. *Cizek, supra,* 225 Cal.App.2d 451, 473.)

tion that Dolan was a mere employee. This is another instance of plaintiff's misconceiving the posture of the case on appeal. We have already explained that substantial evidence in the record supports the trial court's finding to the contrary.

Fourth: Plaintiff complains that if defendant prevails he will be unjustly enriched at plaintiff's expense. The simple answer is that plaintiff could have protected himself if he had exercised his lien rights against the property. Having failed to do so, his remedies were against Dolan with whom he stood in contractual privity. Furthermore we apprehend no unjust enrichment here since defendant paid Dolan a total of $11,250 for the work.

Fifth: Plaintiff charges that he was entitled to a finding on the following issues which were ignored by the trial court:

(1) Whether or not Dolan was defendant's agent by operation of law under the various sections of the Business and Professions Code and of the Code of Civil Procedure cited by plaintiff and discussed above, and (2) whether or not **Dolan** was the ostensible agent of defendant. The trial court specifically found that the rentals were made to Dolan as an independent contractor and not as an agent, servant or employee of defendant. Such finding was sufficient.

(3) As to the effect on defendant's liability of his alleged failure to comply with the mechanics' lien statutes and (4) as to the effect of defendant's payment to Dolan after defendant had knowledge of Dolan's unlicensed status. As pointed out, the action did not seek to enforce a lien. The finding that there was no contract, express or implied, between the parties sufficiently determined defendant's personal liability.

(5) As to the unjust enrichment of defendant. The court specifically found that defendant was *not* unjustly enriched.

(6) Whether plaintiff was entitled to recover on a *quantum meruit* theory. As pointed out above, the court found that no contract, express or *implied,* existed between the parties.

(7) Whether plaintiff presented bills to defendant or his agent in an amount agreed upon between the parties to be correct. In addition to making a finding against an express or implied contract, the court also specifically found that there was no book account or account stated between the parties.

(8) As to the reasonable rental value of the equipment furnished. Since defendant was not liable at all, no such finding was required.

The judgment is affirmed.

Bray, P. J., and Molinari, J., concurred.