**In the Matter of READING COMPANY, Debtor.**

**Bankruptcy No. 71–828.**

United States District Court, E.D. Pennsylvania.

March 31, 1987.

Howard H. Lewis, Philadelphia, Pa., for plaintiff.

Dean R. May, Carpenter, Bennett & Morrissey, Newark, N.J., for defendant.

## MEMORANDUM AND ORDER

DITTER, District Judge.

Reading Company and Central Railroad Company of New Jersey ("CNJ") were both reorganized pursuant to section 77 of the Bankruptcy Act (formerly 11 U.S.C. § 205). Each debtor railroad possessed a pre-bankruptcy unsecured claim against the other: Reading's claim was for $466,-428.35 while CNJ's claim was for $497,-945.52. Central Jersey Industries, the reorganized CNJ, now petitions this court to direct Reading to issue unsecured creditor notes in the full amount of its claim. Reading claims that CJI is entitled only to $31,-517.17, the net of CNJ's claim over Reading's claim. For the reasons that follow, CJI's petition will be denied.

By the terms of CNJ's plan of reorganization, unsecured claims were to be satisfied by the issuance of series I, nonrecourse notes payable from rail proceeds after payment of CNJ's senior obligations. *See also* CNJ order 965 (claims of creditors "will be satisfied pursuant to the plan"). CNJ's plan was confirmed by its reorganization court on August 5, 1979. Subsequently, CJI tendered the series I notes to Reading; however, Reading refused to accept them. Reading claims the series I notes are worthless since they are nonrecourse and the available proceeds are insufficient for their redemption. Reading, on the other hand, expects to pay its unsecured notes in full.

Order 2004 of this court, dated December 23, 1980, authorized consummation of Reading's amended plan of reorganization. The plan authorized the issuance of unsecured, recourse obligations, payable no later than April 1, 1988, in satisfaction of Reading's pre-bankruptcy, unsecured claims. These notes were to be issued on the consummation date except that:

any such holder of securities, claimant or creditor against whom the Debtor has a pre-bankruptcy claim which has not, contrary to prior orders of this Court prohibiting setoffs, been satisfied or against whom any of the Reading Trustees has an unpaid post-bankruptcy claim which has been liquidated shall pay such claims in cash and shall be entitled to receive a distribution of securities or cash pursuant to the Plan only at such time as such claim of the Debtor or Reading Trustees is fully satisfied by payment of cash to the Reorganized Company or by deduction of the amount of such claim from any cash to which such holder of securities, claimant or creditor would otherwise be entitled to receive pursuant to the Plan.

Order 2004, § 4.03(d)(i).[1]

CJI contends that Reading's debt was discharged and satisfied pursuant to CNJ's plan; therefore, it was entitled to receive Reading's unsecured notes in the full amount of its claim on the consummation date. Reading asserts CNJ is not entitled to receive its unsecured notes because CNJ did not pay Reading's claim in cash as Order 2004 provides. In the alternative, Reading asserts a right to an equitable setoff of its pre-bankruptcy claim against CNJ's pre-bankruptcy claim. For the reasons that follow, Reading is entitled to an equitable setoff. Consequently, it is unnecessary to decide whether CNJ is entitled to payment by the terms of Reading's plan.

In bankruptcy, a creditor is entitled to setoff mutual debts that arose prior to commencement of the case. 11 U.S.C. § 553 (formerly section 68 of the Bankruptcy Act). The debtor and the trustee also possess the right to setoff. *In re Braniff Airways, Inc.,* 42 B.R. 443 (Bankr.N.D.Texas 1984); 4 W. Collier on Bankruptcy ¶ 553.12 (15th ed. 1986); 4 W. Collier on Bankruptcy § 68, at 946 (14th ed. 1978). Even though setoff affords one creditor a preference over other creditors, it is permitted and favored because of the injustice

---

1. CNJ order 965, issued in aid of implementation of CNJ's plan, contained identical language.

Nevertheless, CNJ tendered its notes to Reading prior to satisfaction of its pre-bankruptcy claim.

that results if one creditor must pay full value while forfeiting his own claim. *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160 (2d Cir.1979); *Krajci v. Mt. Vernon Consumer Discount Co.*, 16 B.R. 464 (E.D.Pa. 1981).

■ It is also clear that where a debtor brings an action on a pre-bankruptcy claim, a creditor can offset a discharged, pre-bankruptcy claim against the debtor. *Krajci, supra; In re Slaw Construction Corp.*, 17 B.R. 744 (Bankr.E.D.Pa.1982). Thus, while discharge bars affirmative recovery, it does not bar the use of setoff as a defense to a pre-petition claim. Hence, even if Reading's pre-petition claim was discharged by CNJ's plan, Reading would not be precluded from raising it as a defense to CJI's affirmative action on its pre-bankruptcy claim.

■ With these principles in mind, the decisive issue is whether an equitable setoff is appropriate at this juncture of a section 77 reorganization. Former section 68 was not directly applicable to a section 77 reorganization. CJI contends that, as a rule, setoffs are not permitted in a section 77 reorganization. In the alternative CJI urges that the equities weigh in favor of rejecting Reading's claimed setoff.

CNJ principally relies on *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974), where the Supreme Court stated, "[a]s a general rule of administration for § 77 Reorganization Courts, the setoff should not be allowed." In reaching its decision, the Supreme Court, emphasizing the peculiar need in reorganization to continue the debtor as a going concern, focused on two major responsibilities facing a reorganization court: 1) the preservation of cash inflow during the pendency of reorganization sufficient to maintain operations at a survival level; and 2) the formulation of a "fair and equitable" plan, satisfactory to creditors, that preserves an ongoing railroad. The setoff sought in *Baker* was inconsistent with the goal of preserving cash inflow. The Court further found that the allowance of a preference to one creditor over another by a setoff is a form of discrimination at variance with the policy of section 77.

In a footnote, the Court in *Baker* stated that its decision was not contrary to *Lowden v. Northwestern National Bank & Trust Co.*, 298 U.S. 160, 56 S.Ct. 696, 80 L.Ed. 1114 (1936), because no exceptional circumstances were shown which, in equity, would justify discrimination against other creditors. In *Lowden*, the Supreme Court stated that during the pendency of reorganization proceedings, setoffs are governed by balancing the equities which vary with each case. *See also Baker*, 417 U.S. at 476, 94 S.Ct. 2509 (Stewart, J., concurring) (favoring a case by case analysis in light of equitable considerations).

The *Baker* decision, while clearly disfavoring the use of setoffs by creditors in section 77 reorganizations, does not create an absolute bar to setoffs. Moreover, the present case is distinguishable from *Baker*. The lower court in *Baker* permitted a setoff and *positive* judgment against the debtor, Penn Central, during the pendency of reorganization when preservation of cash inflow is essential to reorganization. In addition, the Penn Central reorganization court had enjoined secured creditors from selling the collateral or "offsetting the same, or any [sic] thereof, against any obligation of the Debtor, until further order of this Court." *Baker*, 417 U.S. at 472 n. 8, 94 S.Ct. at 2507 n. 8, (quoting order of the reorganization court). Here, the plans of CNJ and Reading are consummated; therefore, the preservation of cash inflow is not a consideration. Moreover, CJI has not presented evidence that its reorganization court currently enjoins setoffs as was the situation in *Baker*. Finally, this action was instituted in Reading's reorganization court and the debtor is asserting the right to setoff. Thus, it is appropriate to consider Reading's attempted setoff in light of equitable considerations.

CJI contends that equitable considerations warrant disallowance of the claimed setoff because it would not be "fair and equitable" to CNJ's creditors. CJI reasons that a setoff would give Reading a preference over other creditors in contravention

of *Baker.* Moreover, CJI claims a setoff would be unfair because CNJ's creditors approved the plan in reliance upon the availability of the claim against Reading as an asset of CNJ.

The CJI argument fails to consider the full implications of its petition in Reading's reorganization. This court must not only consider what is "fair and equitable" to CNJ's creditors but also what is "fair and equitable" to Reading's creditors. Thus, CJI's blanket reliance on *Baker's* disavowance of preferences is misplaced.

Setoffs are favored in bankruptcy because their use prevents one creditor from paying a debt while forfeiting a comparable claim. Where the right to setoffs is asserted with respect to claims between two reorganized companies following reorganization, this concern is especially acute.

Reading's creditors considered Reading's claim against CNJ to be an asset available for distribution as did CNJ's creditors with respect to CNJ's claim. It is undisputed, however, that CNJ's series I notes are worthless. Clearly, it would not be "fair and equitable" to Reading's creditors for Reading to pay full value on a debt while at the same time forfeiting a comparable claim. Thus, to deny Reading's right to setoff would discriminate in favor of CNJ and its creditors against Reading and its creditors.

Moreover, CJI's assertion that CNJ creditors relied on full payment by Reading in approving CNJ's plan is questionable. CNJ's claim against Reading was an unsecured debt that was, until consummation of Reading's plan, subject to the same risks regarding payment as were CNJ's unsecured debts. Thus, it was conceivable that Reading would pay its unsecured creditors with worthless, nonrecourse notes.

In addition, permitting Reading's setoff is equitable since Reading and CJI would have had to setoff their claims if CJI had adhered to its plan and order 965.

Under both reorganizations, a creditor who owed a pre-bankruptcy claim to the debtor railroad would not receive payment after consummation until he paid his debt to the railroad. Thus, CJI was not autho-

rized by the CNJ plan to tender its series I notes to Reading since Reading's pre-bankruptcy debt to CNJ was still outstanding. Similarly, until CNJ paid its debt to Reading, Reading would not have been authorized under its plan to tender its unsecured notes to CNJ. In such an impasse, the railroads would have to offset their claims against each other or there would be a stalemate forevermore. The only difference now is that CJI prematurely tendered its notes to Reading. This circumstance does not warrant a decision that Reading must pay its debt in full while receiving nothing for its claim. Clearly, setoff of Reading and CNJ's pre-bankruptcy claims is appropriate.

An order follows.

## ORDER

AND NOW, this 31st day of March, 1987, the petition of Central Jersey Industries, Inc., to compel payment of its pre-bankruptcy claim against Reading Company is hereby denied for the reasons set forth in the accompanying memorandum.

It is further ordered that within twenty days from the date of this order, Reading shall issue to CNJ unsecured creditor notes in the amount of $31,517.17.