**In re DE LAURENTIIS ENTERTAINMENT GROUP INC., a Delaware corporation, Debtor.**

**CAROLCO TELEVISION INC., Appellant,**

**v.**

**NATIONAL BROADCASTING CO., Appellee.**

**Nos. 91–55471, 91–55473.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 6, 1992.

Decided May 7, 1992.

Daphne M. Stegman, Teresa A. Blasberg, White & Case, Los Angeles, Cal., for appellant.

Jeremy V. Richards, Pachulski, Stang & Ziehl, Los Angeles, Cal., for appellee.

Before: PREGERSON, D.W. NELSON, and THOMPSON, Circuit Judges.

D.W. NELSON, Circuit Judge:

## OVERVIEW

De Laurentiis Entertainment Group ("DEG") contracted through an intermediary to purchase advertising from National Broadcasting Co. ("NBC"). DEG filed for

bankruptcy under Chapter 11 without having paid for this advertising. DEG was reorganized through a series of steps into Carolco Television, Inc. ("CTI"), which emerged from bankruptcy. When CTI sued NBC on a pre-bankruptcy debt, NBC asserted the advertising debt as a setoff against CTI's claim. The bankruptcy court granted summary judgment for NBC, concluding that it was entitled to recover the advertising debt from DEG on a quantum meruit theory. It also permitted NBC to set off this debt against CTI. The district court affirmed. We affirm as well.

## FACTUAL AND PROCEDURAL BACKGROUND

DEG made movies. It contracted with an advertising agency ("BBDO") to place advertising for various movies in different media markets. BBDO purchased $1.6 million in television advertising from NBC on DEG's behalf. DEG knew and approved of this purchase, but was not directly a party to the purchase contract. NBC billed BBDO, which in turn billed DEG for all its advertising accounts on a separate invoice. Neither DEG nor BBDO had paid the $1.6 million owed to NBC at the time DEG filed for bankruptcy.

DEG had other dealings with NBC as well. DEG granted to NBC the right to televise one of its movies, called "Manhunter," at a price of $1.25 million. When DEG filed for bankruptcy protection, NBC still owed this money to DEG.

In August 1988, DEG filed for bankruptcy protection under Chapter 11. In March 1989, NBC filed a "proof of claim" asserting its $1.6 million interest and claiming a right of setoff against its $1.25 million debt to DEG. NBC also filed a motion for relief from the automatic stay[1] so that it could pursue its setoff claim. NBC's claim was converted into an adversary proceeding by the bankruptcy court. NBC filed a complaint, and the parties proceeded with discovery. NBC has pursued its claim diligently before the bankruptcy court at all times.

Meanwhile, DEG filed a reorganization plan which was confirmed by the bankruptcy court in May 1990. Under this plan, the lion's share of DEG's assets were purchased by Carolco, merged with a Carolco subsidiary, and renamed CTI. Under the plan, CTI acquired the rights to the $1.25 million claim against NBC. According to the plan, this right was transferred "free and clear" of all pre-bankruptcy claims or interests not listed in the plan. NBC's $1.6 million claim was not listed in the plan. NBC did not object to this plan or contest the order confirming the plan.

In July 1990, CTI intervened in the NBC–DEG proceeding and asserted its right to the $1.25 million. NBC in turn asserted its right to a setoff of the entire $1.25 million from the $1.6 million it was owed.[2] Both parties filed motions for summary judgment. The bankruptcy court concluded that disputed issues of fact concerning whether DEG was a party to the BBDO–NBC contract precluded summary judgment on NBC's contract claims. However, it granted NBC summary judgment on its quantum meruit claim against DEG. Finally, the bankruptcy court concluded that NBC was entitled to assert its quantum meruit claim as a setoff against CTI, in spite of CTI's claim that this debt was discharged under the bankruptcy laws when the plan was confirmed. CTI appealed to the district court, which affirmed.

## STANDARD OF REVIEW

■ A grant of summary judgment is reviewed de novo. *Kruso v. International Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). We must determine whether, viewing the evidence in the light most favorable to CTI,

---

**1.** The filing of a bankruptcy petition automatically stays any and all proceedings against the debtor. 11 U.S.C. § 362.

**2.** NBC did not seek to recover any money from CTI. NBC concedes that it must seek $350,-000—the difference between the $1.6 million it is owed and the $1.25 million it owes—from DEG's bankruptcy estate as an unsecured creditor.

there are any genuine issues of material fact and whether the district court correctly applied the law. *Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

## DISCUSSION

### I. Quantum Meruit

 The district court denied NBC's motion for summary judgment on its contract theories, concluding that issues of material fact existed as to whether BBDO had acted as DEG's agent in buying advertising from NBC. However, it granted summary judgment for NBC on its quantum meruit claim.[3] CTI appeals the grant of summary judgment on the quantum meruit claim (case no. 91–55471).

 Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant. B. Witkin, *Summary of California Law: Contracts* § 91 (1987); 55 Cal. Jur.3d Restitution 360–61 (1980). Quantum meruit is not the same as a contract implied in fact. Quantum meruit is based *not* on the intention of the parties, but rather on the provision and receipt of benefits and the injustice that would result to the party providing those benefits absent compensation. B. Witkin, *supra*, at § 12.

NBC sought to recover in quantum meruit the reasonable value of the advertising it had provided for DEG's benefit and for which it had not been paid. The bankruptcy court found that, based on the undisputed factual evidence, NBC had established its claim to recovery. The district court affirmed on the basis of the bankruptcy court's finding that "DEG benefited from the Network Time rendered to it by NBC *at DEG's special instance and request.*" (emphasis added).[4] While CTI disputes whether DEG was ever *contractually* obligated to NBC directly, it does not dispute that it in fact requested that BBDO purchase advertising time for its benefit from NBC. Nor does CTI dispute that DEG received a benefit from NBC for which it has not paid anyone.[5]

 CTI contends, however, that quantum meruit recovery by NBC would be improper because NBC did not expect to be paid *by DEG*, but rather by BBDO. NBC contends that an expectation of payment by the benefited party is not an element of quantum meruit recovery. California law on this subject is not entirely clear.

Two cases relied upon by CTI do suggest such a requirement. In *Fontaine v. Home Box Office*, 654 F.Supp. 298, 303 (C.D.Cal. 1986), the court asserted in dictum that an element of quantum meruit recovery was that the circumstances "would reasonably inform the person sought to be charged that plaintiff, in performing such services, was expecting to be paid *by the person*

---

3. As long as NBC seeks only one recovery, it is entitled to pursue both contract claims and quantum meruit claims arising out of the same transaction. *See, e.g., Haggerty v. Warner*, 115 Cal.App.2d 468, 252 P.2d 373, 377 (1953).

4. The district court erroneously concluded that this factual finding was subject to the "clearly erroneous" standard of review. Since this case arises on summary judgment, the standard of review is de novo. *See Kruso*, 872 F.2d at 1421. However, the district court went on to note that its result would be the same under any standard of review.

The bankruptcy court also cited *Earhart v. Wm. Low Co.*, 25 Cal.3d 503, 158 Cal.Rptr. 887, 600 P.2d 1344 (1979), for the proposition that "[r]ecovery may be had on a quantum meruit claim even if the party against whom relief is sought was not the party who requested the labor, materials or service, the value of which is sought to be recovered." *Earhart* does not support such a conclusion. That case held only that a defendant who requested services from the plaintiff could be liable in quantum meruit even though it did not actually benefit from the services it requested. *Id.* 158 Cal.Rptr. at 894–95, 600 P.2d at 1351–52. The district court properly recognized this problem, and affirmed on a different ground.

5. For this reason, CTI's citation to cases establishing that entitlement to quantum meruit recovery is a question of fact is unavailing. Summary judgment on issues of fact is appropriate where there is no material dispute over the facts. Here, the only dispute is over the legal requirements for quantum meruit recovery.

*sought to be charged."* (emphasis added). A more closely analogous case is *Shepherd v. Perea,* 98 Cal.App.2d 518, 220 P.2d 776, 777 (1950). In *Shepherd,* the plaintiff fixed the defendant's tractor at the request of a third party, who had originally sold the defendant the tractor. The plaintiff sought recovery from the defendant, rather than from the third party with whom he had contracted. The court held that "[u]nder the facts of this case, the rule of unjust enrichment does not apply. Ordinarily, of course, the law will imply a promise on the part of the recipient of services to pay for them. But the implied promise is a question of fact, and a determination by the trier of fact that there was no such promise will be supported on appeal." [6]

However, the vast majority of California cases do not require that a plaintiff expect compensation *from the defendant himself* in order to prove a quantum meruit claim. Compensation must be "expected" only in the sense that the services rendered must not have been intended to be gratuitous. *See, e.g., Haggerty v. Warner,* 115 Cal. App.2d 468, 252 P.2d 373, 377 (1953) (no requirement of intent to compensate); *Carey v. Cusack,* 245 Cal.App.2d 57, 54 Cal. Rptr. 244, 252 (1966) (same); *Wescoatt v. Meeker,* 63 Cal.App.2d 618, 626, 147 P.2d 41 (1944) (presumption of recovery sustained if "it can reasonably be inferred that pecuniary compensation was in the view of the parties," but not if "the services were intended to be gratuitous."). Nor do the treatises suggest that an expectation of payment by the defendant himself is required. *See* B. Witkin, *supra,* at § 113 (expectation of compensation requirement limited to determining whether services were intended to be gratuitous); 55 Cal. Jur.3d, *supra,* at § 49. *Kossian v. American Nat'l Ins. Co.,* 254 Cal.App.2d 647, 62

Cal.Rptr. 225, 227 (1967) provides substantial support for this view. There, the owner of a building damaged by fire contracted with the plaintiff to repair the building. The plaintiff did so. The plaintiff then sought recovery in quantum meruit from the defendant, who had not contracted with the plaintiff but who held a deed of trust on the building and who had received the proceeds of the fire insurance. The court held that the plaintiff was entitled to recover from the defendant on a quantum meruit theory, even though he had no express or implied contractual relationship with the defendant and did not expect payment *from the defendant,* but rather from the owner.

We do not believe California law requires an expectation of payment by the defendant. Such a requirement would be inconsistent with the basic concept of quantum meruit recovery, which is distinct from an "implied-in-fact" contract. As Professor Witkin has stated, "[q]uasi-contracts have often been called implied contracts or contracts implied in law; but, unlike true contracts, quasi-contracts are not based on the apparent intention of the parties to undertake the performances in question, nor are they promises. They are obligations created by law for reasons of justice." B. Witkin, *supra,* at § 12. To require a plaintiff seeking quantum meruit recovery to prove that the parties intended that the defendant compensate her directly for her services would conflate quantum meruit with implied-in-fact contracts by requiring the plaintiff to prove an implicit agreement to pay for services. The whole point of quantum meruit recovery is to compensate plaintiffs who have provided a benefit to defendants but who do *not* have a contract—express or implied—with those defendants.[7]

---

**6.** Two other California cases seem to suggest that quantum meruit does not apply to subcontractors who are not in privity with property owners. *See Truestone, Inc. v. Simi West Indus. Park II,* 163 Cal.App.3d 715, 209 Cal.Rptr. 757, 763 (1984); *Rogers v. Whitson,* 228 Cal.App.2d 662, 39 Cal.Rptr. 849, 853, 856–57 (1964). However, in both cases, the property owner had already paid the general contractor, who had failed to pay the subcontractor. The property

owner was not unjustly enriched, therefore, as he had paid for the work that was done. Both *Truestone* and *Rogers* rejected the quantum meruit claims for this reason, and not because of a lack of privity.

**7.** The *Shepherd* case cited above appears to conflate quantum meruit with contracts implied in fact. While the court there claimed to be talking about "the rule of unjust enrichment"—

■ In this case, NBC contracted with BBDO, but it was DEG who requested the advertising and who benefited from it. DEG (and CTI) have retained this benefit, but have not paid either NBC or BBDO. BBDO has agreed to relinquish its claim against CTI if NBC recovers against them, so there is no chance that CTI will be forced to pay twice. In these circumstances, we believe it would be both unjust and contrary to the principles of quantum meruit law to deny NBC its right to recover on the grounds that NBC had no contract with DEG.

The bankruptcy and district courts correctly granted summary judgment in favor of NBC on its quantum meruit claim.

## II. NBC's Right to a Setoff

■ Having determined that NBC had a right to $1.6 million from DEG, the bankruptcy court addressed itself to the question whether NBC could assert that right as a setoff against CTI. The bankruptcy court allowed the setoff, and the district court affirmed. CTI contends that NBC lost its right to a setoff when DEG's final Chapter 11 reorganization plan was confirmed (case no. 91–55473).

The general purpose of a Chapter 11 bankruptcy is to discharge debtors from their debts so that they can continue in business, while paying creditors equitably from what funds are available. 11 U.S.C. § 1141 provides for the discharge of pre-petition debts after a debtor goes through bankruptcy. It also provides that any assets retained by the debtor under the plan of reorganization are free and clear of any pre-petition debts.[8]

An equally venerable part of the bankruptcy laws allows a creditor to "set off" a claim that the debtor owes it against a claim that it owes the debtor, as long as both debts arose before the bankruptcy. Thus, if the debtor and the creditor each owed the other $20, they could set those debts off against each other, rather than attempting to collect from each other. 11 U.S.C. § 553 protects the right to a setoff from the operation of the remainder of the bankruptcy code.[9]

■ These two sections are in direct conflict in this case. *See generally In re Rooster, Inc.*, 127 B.R. 560, 568 (Bankr. E.D.Pa.1991) (noting but not resolving this statutory conflict). The parties concede that none of the "exceptions" contained in either section 1141 or section 553 apply in this case. CTI contends that sections 1141(c) and (d) operate to discharge its $1.6 million debt to NBC, and that in any event res judicata precludes NBC from asserting that debt because it did not object to the reorganization plan before it was confirmed.[10] On the other hand, NBC con-

---

i.e. quantum meruit—it upheld a trial court's finding that no *promise* to pay was in fact implied by the parties.

**8.** 11 U.S.C. § 1141 provides that:
 (a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind ... any creditor ... whether or not such creditor has accepted the plan.

 . . . . .

 (c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, *the property dealt with by the plan is free and clear of all claims and interests of creditors* ...
 (d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, *the confirmation of a plan—*
 (A) *discharges the debtor from any debt that arose before the date of such confirmation* ...
 (emphasis added).

**9.** 11 U.S.C. § 553 provides that:
 (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, *this title does not affect any right of a creditor to offset a mutual debt* owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case
 ...
 (emphasis added).

**10.** CTI's res judicata argument largely misses the point. NBC concedes that it is bound by the plan of reorganization. It claims, however, that the plan does not affect its right of setoff because that right is protected by section 553 and cannot be taken away by a reorganization plan. To resolve this issue, we must decide whether section 553 takes precedence over the Chapter 11 discharge provided for in section 1141. Thus, CTI's "res judicata" argument can prevail only if their statutory argument prevails, and we need not treat them separately.

tends that under section 553, the plan did not affect its right to assert a setoff in response to CTI's pre-bankruptcy claim against it. We must decide which of the two code sections controls. This is a question of first impression in this circuit, and other courts considering this and similar questions are closely divided.

Only two courts have considered the precise conflict we face here. In *In re Newport Offshore*, 86 B.R. 325, 326 (Bankr. D.R.I.1988), the court concluded in an alternative holding that the setoff in question was discharged. It said: "[Allowing the setoff] is dependent upon the correctness of the assumption that potential § 553 setoff rights survive confirmation, notwithstanding the fact that such alleged setoff rights have not been judicially established before confirmation. We conclude that, on the present facts, said assumption is erroneous." That is the extent of *Newport Offshore*'s discussion of the issue.

The other court to consider the question reached the opposite conclusion. After citing to section 553, it stated: "Thus, even after confirmation, [the creditor] could assert as a setoff to a prepetition liability owed to the Debtor a claim that arose prepetition." *In re Service Decorating Co.*, 105 B.R. 859, 862 (Bankr.N.D.Ill.1989) (citations omitted). This statement was

dictum, however, since in that case the creditor's claim arose after the bankruptcy petition was filed, not before as section 553 requires.

In addition, there are four lines of analogous cases which may shed some light on this question. The first group of cases considers the conflict between section 553 and 11 U.S.C. § 1327, which governs discharge in Chapter 13 proceedings. The language of section 1327 is virtually identical to that contained in section 1141.[11] These cases have concluded that section 1327 takes precedence over section 553. *See United States ex rel. I.R.S. v. Norton*, 717 F.2d 767, 774 (3rd Cir.1983); *In re Hackney*, 20 B.R. 158, 159 (Bankr.D. Idaho 1982); *In re Holcomb*, 18 B.R. 839, 841 (Bankr.S.D. Ohio 1982) (alternative holding). These cases provide support for CTI's position, because the language of section 1327 closely tracks the language of 1141 and because, like Chapter 11, Chapter 13 provides for a plan of reorganization.[12] *Hackney* in particular relied on the creditor's opportunity to raise its claim during the reorganization proceedings in concluding that the creditor was barred from asserting the setoff outside those proceedings. *See* 20 B.R. at 159.[13]

A second group of cases considers the conflict between section 553 and section

---

**11.** Section 1327 provides that:

(a) The provisions of a confirmed plan bind the debtor and each creditor ... whether or not such creditor has objected to, has accepted, or has rejected the plan.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

**12.** We note, however, that in all of these cases the Internal Revenue Service was the creditor. The IRS attempted to retain tax overpayments and set them off against other debts. The factual settings of these cases may have had some influence on their results.

**13.** In addition, CTI refers the court to a number of cases which have held in other contexts that a confirmed plan of reorganization is entitled to res judicata effect. *See, e.g., Dep't of the Air Force v. Carolina Parachute Corp.*, 907 F.2d 1469, 1473–74 (4th Cir.1990) (section 1141 plan

precludes reliance by United States on Anti–Assignment Act); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050–54 (5th Cir.1987) (section 524 discharge is res judicata as to discharge of a third-party guaranty); *In re Gregory*, 705 F.2d 1118, 1121 (9th Cir.1983) (section 1327 plan precludes attack on legality of "zero-payment" provision of plan); *In re Blanton Smith Corp.*, 81 B.R. 440, 443 (Bankr.M.D.Tenn.1987) (section 1141 plan was res judicata even if based on erroneous interpretation of the law); *In re Arctic Ents.*, 68 B.R. 71, 79–80 (Bankr.D.Minn.1986) (section 1141 plan precludes assertion of lien not recognized in plan); *In re Henderberg*, 108 B.R. 407, 411–14 (Bankr.N.D.N.Y.1989) (section 1141 plan precludes later contest of the priority status of claims dealt with in the plan).

These cases tend to support CTI's position, since they establish that a plan of reorganization is binding on creditors even if it is legally erroneous. They are not directly relevant to this case, however, because NBC concedes that it is bound by the plan. Its position is that under section 553 the plan does not eliminate its right to a setoff.

524(a)(2), a provision similar to section 1141 but which applies in Chapter 7 cases.[14] The majority of these cases have held that section 553 takes precedence over section 524(a)(2). *See In re Davidovich,* 901 F.2d 1533, 1538–39 (10th Cir.1990); *In re Buckenmaier,* 127 B.R. 233, 236–37 (9th Cir. BAP 1991) (also noting that "[m]ost cases hold that a valid setoff claim cannot be defeated by a discharge in bankruptcy."); *Krajci v. Mt. Vernon Consumer Discount Co.,* 16 B.R. 464, 466 (Bankr.E.D.Pa.1981) ("The fact that plaintiffs' debt to defendant was discharged in bankruptcy does not affect defendant's right to a set-off" under section 553); *In re Morgan,* 77 B.R. 81, 84–85 (Bankr.S.D.Miss.1987); *In re Conti,* 50 B.R. 142, 149 (Bankr.E.D.Va.1985); *In re Ford,* 35 B.R. 277, 279–80 (Bankr.N.D.Ga. 1983); *In re Slaw Constr. Corp.,* 17 B.R. 744, 747–48 (Bankr.E.D.Pa.1982). Two courts have reached the opposite conclusion, however. *See In re Dezarn,* 96 B.R. 93, 94–95 (Bankr.E.D.Ky.1988); *In re Johnson,* 13 B.R. 185, 188–89 (Bankr. M.D.Tenn.1981).

The majority view provides strong support for the primacy of section 553, since those courts subordinate section 524(a)(2) to that provision even though section 524 *expressly* applies to setoffs. Section 524 applies in Chapter 7 proceedings, however, where there is no confirmed plan of reorganization. CTI contends that the result should be different where (as in Chapter 11 proceedings) creditors have had a prior opportunity to assert their rights.

A final set of cases involves the interaction between section 68 and section 14(f) of the old Bankruptcy Act, in effect until 1978. These sections closely track sections 553 and 1141 respectively.[15] Cases interpreting these sections gave precedence to section 68 (the predecessor to section 553). *See Record Club of America v. United Artists Records,* 80 B.R. 271, 278 (Bankr. S.D.N.Y.1987); *see also In re Reading Co.,* 72 B.R. 293, 294–95 (Bankr.E.D.Pa.1987) (allowing setoff in section 77 reorganization).[16] *Cf. Marley v. United States,* 381 F.2d 738, 742, 180 Ct.Cl. 898 (1967) (provision that, after reorganization, debts were "free and clear of liens" did not bar setoffs). These cases suggest that section 553 ought to take precedence under the Bankruptcy Code, since its predecessor section enjoyed such precedence under the old Act. *See Midatlantic Nat'l Bank v. New Jersey,* 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (Bankruptcy Code is to be interpreted consistently with old Act unless Congress demonstrated an intent to change a particular result).

We conclude that section 553 must take precedence over section 1141. In reaching this conclusion, we rely not only on the foregoing persuasive authority, but also on the language and structure of section 553 and the policies which underlie it. Section 553 provides that, with listed exceptions not relevant here, "this title does not affect the right of any creditor to offset a mutual debt...." This language not only establishes a right to setoffs in bankruptcy, subject to enumerated exceptions, but seems

---

**14.** 11 U.S.C. § 524(a)(2) provides that:

A discharge in a case under this title—
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover *or offset* any such debt as a personal liability of the debtor ...

(emphasis added). The conflict between section 524 and section 553 is even more direct than the one we face, since section 524 explicitly prohibits recovery of offsets.

**15.** Section 68(a) provided:

In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

11 U.S.C. § 108 (repealed 1978). Section 14(f)(2) prevents creditors from "instituting or continuing any action or employing any process to collect debts." 11 U.S.C. § 32(f)(2) (repealed 1978).

**16.** *Reading* is arguably inconsistent with the Supreme Court's decision in *Baker v. Gold Seal Liquors,* 417 U.S. 467, 474, 94 S.Ct. 2504, 2508, 41 L.Ed.2d 243 (1974). The Court there noted the preference given to setoffs under section 68 in general bankruptcy cases, but concluded that setoffs were not allowable in section 77 (railroad reorganization) cases. *Baker* has no effect on this case, though. As the Court noted in *Baker,* "a proceeding under § 77 is not an ordinary proceeding in bankruptcy." *Id.* at 470 n. 3, 94 S.Ct. at 2507 n. 3.

intended to control notwithstanding any other provision of the Bankruptcy Code. To give section 1141 precedence would be to ignore this language.

Furthermore, a contrary conclusion essentially would nullify section 553. Section 553 does not by itself create a right of setoff. Instead, it merely allows setoffs in bankruptcy to the same extent they are allowed under state law. *Buckenmaier*, 127 B.R. at 237. If section 1141 were to take precedence over section 553, setoffs would be allowed under Chapter 11 only where they were written into a plan of reorganization. Section 553 would then be largely superfluous, since a setoff could be written into the reorganization plan even without section 553.[17] A reading of section 553 which renders it meaningless should be highly suspect.

Our reading is also consistent with the history of the bankruptcy laws. Setoffs have a long and venerable history, dating back to Roman and English law. Setoffs in bankruptcy are almost as venerable, having been established in England in 1705 and in the United States in 1800. *Buckenmaier*, 127 B.R. at 237. Since that time, setoffs in bankruptcy have been "generally favored," and a presumption in favor of their enforcement exists. *Id.* Giving precedence to section 1141 would reverse this long-standing presumption. Setoffs would only be allowed if sanctioned in a plan of reorganization. If Congress had intended to make such a major change from the common law, one might expect some indication of that intent in the statute itself. None can be found.

Moreover, the primacy of setoffs is essential to the equitable treatment of creditors. A setoff is allowed as a defense to a claim brought *by the debtor* against a creditor. The creditor can claim only an amount large enough to offset its debt; it cannot collect anything from the debtor. Absent a setoff, a creditor in NBC's position is in the worst of both worlds: it must pay its debt to the debtor in full, but is only entitled to receive a tiny fraction of the money the debtor owes it. It was to avoid this unfairness to creditors that setoffs were allowed in bankruptcy in the first place.[18]

Finally, we note the unfairness that would result from barring a setoff in the case before us. In this case, NBC asserted its setoff during the pendency of the bankruptcy proceedings, filing both a petition for relief from stay and a proof of claim. CTI was therefore on notice that NBC intended to assert a setoff against it. Furthermore, NBC diligently pursued its claim before the bankruptcy court during the entire period the reorganization plan was being considered. The bankruptcy court apparently assumed that NBC's claim would survive the order confirming reorganization, since it scheduled discovery and other proceedings even after the reorganization plan was confirmed. If the adversary proceedings regarding NBC's claim had been concluded *prior* to the order confirming reorganization, NBC would unquestionably be entitled to its setoff. It would be unjust to deny NBC that right here solely because of the timing of the proceedings, particular-

---

**17.** CTI suggests that section 553 is intended merely to establish that a setoff is not a preferential transfer in violation of 11 *U.S.C.* § 547. Were this the sole intent of section 553, it could say exactly that: that setoffs do not constitute preferential transfers. It would also more appropriately be included as an exception to section 547, rather than as a separate provision in its own right. In fact, however, section 553's language is far more general. The sweeping language of section 553 belies the limited reading CTI would afford it.

**18.** It may be countered that setoffs themselves are unfair to creditors. Unsecured creditors generally have to settle for receiving a small

percentage of the sum they are owed, sometimes as little as a few cents on the dollar. The creditor who asserts a setoff, by contrast, is paid 100% of its claim (at least up to the value of the setoff). This differential treatment contradicts the general policy of the bankruptcy laws, which is to treat the same class of creditors equally. *See In re Elcona Homes Corp.*, 863 F.2d 483, 484-86 (7th Cir.1988) (taking this view). Whatever the merits of this argument, it is an argument against allowing setoffs in bankruptcy *at all.* We cannot give weight to such arguments, because section 553 makes it clear that Congress intended to preserve the right to a setoff.

ly since NBC had no control over their scheduling.

To be sure, the result we reach will place some burden on the policies of discharge and of finality served by section 1141. However, NBC does not seek to collect its debt from CTI. It merely seeks a setoff against CTI's claims against it. The primary purpose of section 1141—to prevent post-bankruptcy debt collections—is therefore not disserved in this case. In light of the strong policies favoring setoffs, we think that section 553 must prevail over section 1141, and therefore that NBC was entitled to assert its setoff against CTI.

## CONCLUSION

The judgments of the district court are AFFIRMED.