**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-1161**

In re:  LARRY EDWARD WOOD; JESSICA ANN WOOD,

Debtors.

------------------------------

LARRY EDWARD WOOD; JESSICA ANN WOOD,

Plaintiffs – Appellees,

v.

UNITED STATES DEPARTMENT OF HOUSING & URBAN DEVELOPMENT (HUD),

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Beckley.  Irene C. Berger, District Judge.  (5:19-cv-00302)

Submitted:  March 12, 2021                     Decided:  April 7, 2021

Before WILKINSON, NIEMEYER, and QUATTLEBAUM, Circuit Judges.

Reversed and remanded by published opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge Quattlebaum joined.

Richard E. Zuckerman, Principal Deputy Assistant Attorney General, Bruce R. Ellisen, Bethany B. Hauser, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Michael B. Stuart, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellant. William R. Wooton, WOOTON & WOOTON, Beckley, West Virginia, for Appellees.

---

WILKINSON, Circuit Judge:

The Roman deity Janus was celebrated in ancient times for an ability to look simultaneously in two directions. The Bankruptcy Code performs a Janus-like function in our legal system. It must look forward, to preserve some modicum of material security as debtors begin their financial lives anew. At the same time, however, it must also look backward, to ensure that the debts of bankruptcy petitioners' "past lives" are discharged as equitably as circumstance allows. This case presents a typical clash between these two faces of the Code. Larry and Jessica Wood, the bankruptcy petitioners, both owe and are owed a debt respecting the United States. Looking ahead, the Woods wish to place the tax overpayment the government owes them outside the reach of all creditors, including the government itself. Looking back, the Treasury claims it is bound by statute to seek setoff of those funds against a past debt that the Woods owed another department of the government.

Because this court ruled in *Copley v. United States*, 959 F.3d 118 (4th Cir. 2020), that the Code accords a special priority to the Treasury's right of setoff as against a bankrupt's right of exemption, we hold that the protections typically accorded properly exempted property under 11 U.S.C. § 522(c) do not prevail over the government's 26 U.S.C. § 6402(d) right to offset mutual debts. Furthermore, although the government exercised this right too hastily, before first requesting relief from the automatic stay, we can see no reason to abridge the government's right under 11 U.S.C. § 362(d) to file a motion seeking the stay's annulment. We therefore remand the case for further proceedings in accordance with this decision.

3

# I.

To finance the purchase of a mobile home in 2008, the Woods borrowed $39,739.44. J.A. 55. A little under six years later, however, the Woods defaulted on their home loan, leaving behind an unpaid balance of $23,066.66. The United States Department of Housing and Urban Development (HUD), which had insured the Woods' loan, paid the amount outstanding and, shortly thereafter, issued the Woods a demand for payment in the same amount.

HUD then sent the Woods a Notice of Intent to Collect by Treasury Offset. This Notice informed the Woods that the Treasury could offset their income tax overpayments against the debt they owed to HUD. In 2017, the Treasury adopted this course, offsetting the Woods' federal tax overpayment of $9,961 toward the satisfaction of their debt.

On March 21, 2018, the Woods filed a Chapter 7 bankruptcy petition, opting to exempt any potential 2017 income tax overpayment. A few days later, on March 26, 2018, they filed their federal income taxes. And the returns on this filing did, in fact, show an overpayment of $6,086. Again, though, the Treasury offset this overpayment, on April 4, 2018, against the Woods' debt to HUD.

In response, the Woods filed suit in bankruptcy court. They requested that the court void HUD's lien and order a return of the $6,086 remitted to HUD. The court identified the following two questions as essential to the disposition of the case: "(1) whether a debtor's tax overpayment becomes property of the estate and hence protected by the stay, and (2) whether, if part of the debtor's estate, the debtor may exempt the overpayments and defeat a governmental creditor's § 553 right to setoff." J.A. 59. Relying on the reasoning

4

of *In re Sexton*, 508 B.R. 646 (Bankr. W.D. Va. 2014), and *In re Addison*, 533 B.R. 520 (Bankr. W.D. Va. 2015), the bankruptcy court answered both questions in the affirmative. *Id.* It accordingly entered a Judgment Order against the United States, requiring the government to repay the $6,086.

The United States timely appealed to the district court, seeking reversal of the bankruptcy court's judgement on the aforementioned questions and requesting permission to seek relief from the automatic stay. Like the bankruptcy court, the district court found that the $6,086 overpayment had been the property of the Woods' bankruptcy estate when the Treasury offset it and that the Woods' exemption of the overpayment under § 522 preempted any setoff under § 553 and § 6402. J.A. 83, 86. The district court also found that the Woods' overpayment was further protected by the Code's automatic stay provisions, and that, because the Treasury had knowingly intercepted the overpayments after the Woods filed for bankruptcy, equity did not favor granting the government permission to seek relief from the automatic stay. J.A. 86–87.

The United States timely appealed, maintaining that the government's setoff rights superseded the Woods' exemption rights under § 522(c). It also appealed the district court's denial of permission to seek relief from the automatic stay. Because these are purely questions of law, we review them *de novo*. *In re Harford Sands Inc.*, 372 F.3d 637, 639 (4th Cir. 2004).

II.

A.

A review of some basics is in order. When the Woods filed for Chapter 7 bankruptcy, an automatic stay issued against a variety of acts that otherwise might have been taken against them. 11 U.S.C. § 362. This automatic stay bars almost all attempts by creditors to pursue the payment of debts owed by the bankruptcy petitioner. It is one of the "fundamental debtor protections provided by the bankruptcy laws," giving "the debtor a breathing spell from his creditors." H. Rep. No. 95-595, 95th Cong., at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6297. In addition to preventing creditors from harassing debtors, the automatic stay "enables debtors to resolve their debts in a more orderly fashion." *In re Soares*, 107 F.3d 969, 975 (1st Cir. 1997). Creditors also benefit. The stay preempts a "race to the courthouse" and provides procedures for the fair allocation of the bankrupt's assets. *See* Thomas H. Jackson, *Bankruptcy, Non-Bankruptcy Entitlements*, *and the Creditors' Bargain*, 91 Yale L.J. 857, 862 (1982).

Along with the issuance of an automatic stay, the debtor's bankruptcy estate is created. This estate includes almost all of the debtor's property, broadly construed to encompass "all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provisions." *Copley*, 959 F.3d at 122 (quoting *Owen v. Owen*, 500 U.S. 305, 308 (1991)). The Woods' bankruptcy estate, for example, includes their tax overpayment, even though the government currently holds those funds. *See In re Sexton*, 508 B.R. at 662–63; *In re Addison*, 533 B.R. at 528–29. Ultimately, most of the property in such an

6

estate will be allocated to creditors according to the priority rules of the Bankruptcy Code. Like Janus, the Bankruptcy Code thus looks backward in time, imposing order in what would otherwise be a chaotic situation by settling past debts according to clear procedures.

But bankruptcy also looks to the future, seeking to rehabilitate debtors and provide them a fresh start. *See* Daniel J. Bussel & David A. Skeel, Jr., Bankruptcy 19 (10th ed. 2015). The Bankruptcy Code's most powerful tool for this purpose is the discharge. At the end of bankruptcy proceedings, a debtor can usually expect that most pre-petition debts against him will be eliminated. *See id.* at 25. But the Bankruptcy Code offers to do even more than wipe the slate clean. It also tries to ensure that the debtor will not embark on his fresh start with nothing. To this end, debtors may claim various types of property as being "exempt" from the bankruptcy estate. Such property will not be used to pay any creditor claims subject to discharge. In this case, the Woods took advantage of an exemption for personal property in the hopes of retaining their 2017 tax overpayment of $6,086.

B.

Here, however, the government has asserted a claim superior to the Woods' exemption right. This claim is based upon the "venerable" right of creditors, "dating back to Roman and English Law," to set off debts they owe the debtor against the debts owed to them. *In re De Laurentiis Entm't Grp., Inc.*, 963 F.2d 1269, 1277 (9th Cir. 1992). For example, if creditor A is owed $10,000 by debtor B, and creditor A owes debtor B $5,000, then the common-law right of setoff allows creditor A to eliminate its debt to debtor B, reducing B's debt to A to $5,000. This right "is based on the common sense notion that 'a man should not be compelled to pay one moment what he will be entitled to recover back

7

the next.'" *In re Davis*, 889 F.2d 658, 661 n.5 (5th Cir. 1989) (quoting William H. Lloyd, *The Development of Set-Off*, 64 U. Pa. L. Rev. 541, 541 (1916)). It is, furthermore, "inherent in the federal government . . . and 'exists independent of any statutory grant of authority to the executive branch.'" *Marre v. United States*, 117 F.3d 297, 302 (5th Cir. 1997) (quoting *United States v. Tafoya*, 803 F.2d 140, 141 (5th Cir. 1986)).

Nevertheless, there is unambiguous statutory recognition of this setoff right in 26 U.S.C. § 6402(d), the provision in which the government's right to conduct the setoff at issue here is explicitly located. This provision states that, "[u]pon receiving notice from any Federal agency that a named person owes a past-due legally enforceable debt . . . to such agency," the Secretary of the Treasury "shall reduce the amount of any overpayment payable to such person by the amount of such debt." 26 U.S.C. § 6402(d). The Secretary must then "pay the amount by which such overpayment is reduced" to the creditor agency. *Id.*

This is as plain a description of a setoff right as can be found in the law. The *Copley* court found, for example, that § 6402(d)'s sister provision, § 6402(a), vested a setoff right in the Treasury, even as the exercise of said right remained at the Treasury's discretion: "In the case of any overpayment, the Secretary . . . *may* credit the amount of such overpayment . . . against any liability in respect of an internal revenue tax . . . ." 26 U.S.C. § 6402(a) (emphasis added). The language of § 6402(d), however—"the Secretary *shall*"—is not permissive, but imperative, not merely granting the Secretary the right to setoff, but positively directing him to exercise it. 26 U.S.C. § 6402(d) (emphasis added).

8

The case for a statutory setoff right is even stronger here for § 6402(d) than it was in *Copley* for § 6402(a).

If the common law and Title 26 ground the government's setoff right, then 11 U.S.C. § 553(a) preserves it in bankruptcy. *See Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 20 (1995). Section 553(a) provides that, with certain exceptions, Title 11 "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." 11 U.S.C. § 553(a). Thus, § 553 "is not an independent source of law governing setoff; it is generally understood as a legislative attempt to preserve the common-law right of setoff arising out of non-bankruptcy law." *United States v. Norton*, 717 F.2d 767, 772 (3d Cir. 1983); *see also Strumpf,* 516 U.S. at 20. Thus, setoffs in bankruptcy "have been generally favored, and a presumption in favor of their enforcement exists." *De Laurentiis*, 963 F.2d at 1277 (internal quotation marks omitted).

The courts below, however, declined to hold the government's setoff right superior to the exemption right. But those courts lacked the guidance of *Copley*. And the language in *Copley* is as general as it is clear: "The very broad scope of Section 553(a) necessarily includes the property exemption provisions contained in 11 U.S.C. § 522(c). Although Section 522(c) generally provides that exempt property cannot be used to satisfy pre-petition debt, that provision, as part of Title 11, must be read in conjunction with the unambiguous language of Section 553(a)." *Copley*, 959 F.3d at 124. The Woods' reliance

9

on the § 522 exemption protection as a bar against the government's assertion of setoff was, in the light of this holding, misplaced.

In sum, then, the Treasury's authority to exercise its right to offset the Woods' tax overpayment against their debt to HUD is anchored firmly in § 6402(d) and § 553(a). This offset right supersedes the general exemption protections of § 522(c). As against the government's right to setoff, the Woods' income tax overpayment is not exemptible. The Woods have no right to demand turnover of the overpayment.

The courts below expressed concern that such a holding may compromise the solicitude that the Bankruptcy Code's forward-looking face was intended to show individuals confronting dire financial straits. But there need be no desire for pro-debtor or pro-creditor perspectives on the bench. If there are excessive exemptions, lending institutions may be more reluctant to lend. If exemptions are too few, prospective borrowers may be more hesitant to borrow. The way to approach it all is straight down the middle, which means here and elsewhere that Congress is the one to strike the debtor/creditor balance, and courts are the ones to use their own sound judgment and discretion in the service of the Code and its text.

III.

Determining that the government had the right to offset its debt to the Woods is not the end of the matter. The Bankruptcy Code imposes strict procedural requirements on how creditors may interact with debtors once a bankruptcy petition has been filed. If these rules are not followed, disorder will result and the mission of bankruptcy law to provide a uniform and orderly process to resolve the bankrupt's debts will be frustrated. It is from

10

this vantage point that we now turn to the next question before us: whether the government contravened the automatic stay by offsetting the Woods' overpayment against its debt to HUD.

Under the Code's automatic stay provisions, the bankruptcy petition itself operates as an automatic stay "applicable to all entities" of a broad range of actions aimed at the reappropriation of property in the bankruptcy estate. 11 U.S.C. § 362(a). Specifically articulated at § 362(a)(7) is an automatic stay on "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." Such a setoff has been formally effected upon completion of the following three steps: "(i) a decision to effectuate a setoff, (ii) some action accomplishing the setoff, and (iii) a recording of the setoff." *Strumpf,* 516 U.S. at 19. Given that the Woods' overpayment is concededly part of their bankruptcy estate, it is evident that by unilaterally remitting the overpayment to HUD, so that HUD could record it against the Woods' debt, the government did exactly what the Code forbids.

An analysis that considers the one exception relevant to offset, § 362(b)(26), further reinforces this conclusion. This provision explicitly carves out from the general stay "the setoff under applicable nonbankruptcy law of an income tax refund, by a governmental unit, with respect to a taxable period that ended before the date of the order for relief *against an income tax liability* . . . ." 11 U.S.C. § 362(b)(26) (emphasis added). In the context of a narrow, specifically articulated exception to a general stay of all setoff actions against property in the bankruptcy estate, a straightforward application of the *expressio unius* canon makes plain that only setoffs against income tax liability—and not, for example,

11

against housing loan liability—may licitly proceed under the general stay. *See In re Sexton*, 508 B.R. at 663. To find otherwise would not be to interpret Congress' words but to add terms on Congress' behalf, an exercise exceeding the authority of this court.

Nor does § 553(a) implicitly expand the scope of the exception. One reading of § 553(a), plausible on its face, is that its admonition against interpretations "affect[ing] any right of a creditor to offset a mutual debt" loosens the constraints of the automatic stay. But such a reading is already foreclosed by the law of this circuit. In *United States v. Reynolds*, 764 F.2d 1004, 1006–07 (4th Cir. 1985), this court harmonized § 553(a), § 362(a), and § 362(a)(7), explaining that "together these sections preserve a creditor's right to any setoff he possesses but automatically stay the exercise of that right unless the creditor obtains from the bankruptcy court relief from the automatic stay." Section 362(a)(7) does not abrogate the government's setoff rights; it only specifies the proper time and manner of their exercise. The Supreme Court has also looked with favor on this rendering of the Code. *Strumpf*, 516 U.S. at 20 (stating that these sections are "most naturally read as merely recognizing [a] restriction upon *when* an *actual setoff* may be effected—which is to say, not during the automatic stay" (emphasis in original)). The government does not purport to characterize what it did with the Woods' overpayment as anything other than a genuine setoff, nor did it move to lift the stay before exercising its right. The clear import

of our precedent, then, is that the government's actions violated the automatic stay, as the district court correctly found.

IV.

In short, the government has a right to offset its debt to the Woods but failed to exercise it according to the letter of the law. So what now? To be clear: the government is not obligated to turn over the money it owes the Woods to the bankruptcy estate. *See Strumpf*, 516 U.S. at 19–20. But neither is it yet permitted to perfect its setoff by formally recording the Woods' tax overpayment against their debt to HUD. *See id.* at 19. This is because actions taken in violation of the automatic stay are presumptively invalid. *See In re Soares*, 107 F.3d at 976. However, the automatic stay can be retroactively annulled, thus legitimizing the creditor action. *See, e.g.*, *id.* at 976–77; *In re Sexton*, 508 B.R. at 666.

To do so, the government must seek relief from the automatic stay under 11 U.S.C. § 362(d). The district court denied relief from the automatic stay, but that decision lacked the benefit of our holdings here and in *Copley* that the government's statutory setoff rights under § 6402 trump the Woods' right to exempt their overpayment. Barring exceptional circumstances, the government's motion for relief from the automatic stay in cases of this kind should ordinarily be granted. *See Cumberland Glass Mfg. Co. v. De Witt*, 237 U.S. 447, 455 (1915). As the Supreme Court has made clear, "[w]hile the operation of the privilege of set-off has the effect to pay one creditor more than another, it is a provision based upon the generally recognized right of mutual debtors, which [was] enacted as part of the bankruptcy act, and when relied upon should be enforced by the court." *Id.*

Because no motion for relief from the stay has yet been filed, however, we need not further opine. We hold that the lower court must, in considering this motion, give proper weight to the government's rights under § 6402(d), consistent with the carefully wrought requirements of the Bankruptcy Code.

V.

For the foregoing reasons, the judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion. The government's pending motion for summary disposition is accordingly denied as moot.

*REVERSED AND REMANDED*